**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

**DAVID TODD HARRIS**

**Plaintiff,**

**v.**

**IEVA AUGSTUMS**

**Defendant.**

**Civil Action No.: 1:26-cv-02787**

**MEMORANDUM IN SUPPORT OF DEFENDANT IEVA AUGSTUMS MOTION TO DISMISS PLAINTIFF DAVID TODD HARRIS' COMPLAINT**

Andrew J. Smith, Esq., (VSB No. 81538)
Cala Dossey, Esq.. (VSB No. 100140)
Berenzweig Leonard, LLP
8300 Greensboro Drive; Suite 1250
McLean, Virginia 22102
Telephone: 703-760-0402
Facsimile: 703-462-8674
dsmith@berenzweiglaw.com
cdossey@berenzweiglaw.com
*Counsel for Defendant*

## TABLE OF CONTENTS


I. Introduction .......... 1

II. Factual Background. .......... 2

III. Standard of Review. .......... 4

IV. Argument. .......... 5

A. Count VI Should Be Dismissed With Prejudice Because Virginia Does Not Recognize a Common-Law Claim for Intrusion Upon Seclusion. .......... 5

B. Count I Should Be Dismissed Because Plaintiff Does Not Plausibly Plead a Civil Claim Under the Virginia Computer Crimes Act. .......... 6

(i) Plaintiff does not plead an injury sufficient to maintain a civil VCCA claim. .......... 6

(ii) Plaintiff does not plead facts showing computer invasion of privacy under § 18.2-152.5. 8

(iii) Plaintiff does not adequately plead the conversion required by § 18.2-152.3. .......... 9

C. Counts II and IV Fail Because Plaintiff Does Not Plausibly Allege an Interception of a Communication. .......... 10

(i) The Wiretap Act requires acquisition during transmission, not subsequent access to stored communications. .......... 11

(ii) Paragraph 29 of the Complaint Does Not Plausibly Allege a Contemporaneous Interception, and Plaintiff's Reliance on Real-Time Location Information Does Not Cure That Deficiency. .......... 13

(iii) Plaintiff pleads no interception of an oral communication. .......... 15

(iv) The derivative disclosure and use theories fail without an unlawful interception. .......... 15

D. Count V Fails Because Plaintiff Does Not Identify the Property Allegedly Converted, and Neither Possible Theory States a Viable Claim. .......... 16

E. Count III Should Be Dismissed Because Plaintiff Has Not Alleged a Violation of the Stored Communications Act (18. U.S.C. §§ 2701, et seq.). .......... 19

V. Conclusion. .......... 20

## TABLE OF AUTHORITIES

### Cases

*American Conservative Union v. Institute for Legislative Analysis*, No. 1:24-cv-500, 2025 WL 510236, at *10 (E.D. Va. Feb. 13, 2025) ........ 16, 18
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........ 4, 9, 14
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)........ 5, 9, 14
*Byrd v. Aaron's, Inc.*, No. CV 11-101, 2012 WL 12887775, at *7 (W.D. Pa. Feb. 17, 2012)....... 13
*Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 424 (E.D. Va. 2021) ........ 5, 6
*Centre Law & Consulting, LLC v. Axiom Res. Mgmt., Inc.*, 456 F. Supp. 3d 765, 771–72 (E.D. Va. 2020) ........ 8, 10
*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F.Supp.2d 311, 337 (D.D.C. 2011) ........ 20
*Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 935 (E.D. Va. 2010)........ 9
*Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *as amended* (Jan. 20, 2004) ........11, 13
*Garcia v. City of Laredo*, 702 F.3d 788, 792–93 (5th Cir. 2012) ........ 20
*Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 640 (E.D. Va. 2009) ........ passim
*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ........ 18
*Hately v. Watts*, 917 F.3d 770, 781–82 (4th Cir. 2019) ........ 5, 13
*iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057–59 (N.D. Cal. 2012)........ 20
*Jones v. Abel*, No. 25-cv-779 (LJL), 2025 WL 2821370, at *6–7 (S.D.N.Y. Oct. 3, 2025) ........ 20
*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ........11
*Letendre v. Parallon Enterprises, LLC*, No. 3:24-cv-184, 2025 WL 950405, at *15 (E.D. Va. Mar. 28, 2025), *reconsideration denied,* E.D. Va. No. 3:24CV184 (RCY), 2025 WL 2323940 (E.D. Va. Aug. 12, 2025) ........ 7
*Luis v. Zang*, 833 F.3d 619, 627 (6th Cir. 2016) ........11, 13
*Mackey v. McDannald*, 298 Va. 645, 659, 842 S.E.2d 379, 387 (2020) ........ 16
*Marsh v. Curran,* 362 F. Supp. 3d 320, 327 (E.D. Va. 2019)........11
*Mayers v. Mayers*, 15 Va. App. 587, 592, 425 S.E.2d 808, 811 (1993) ........ 19
*McArthur v. Brabrand*, 610 F.Supp.3d 822 (E.D. Va. 2022) ........ 18
*Noel v. Hall*, 568 F.3d 743, 749–51 (9th Cir. 2009)........ 15
*OpenRisk, LLC v. MicroStrategy Servs. Corp.*, 876 F.3d 518, 527 (4th Cir. 2017) ........ 7
*Ott v. Goodwin*, No. 4:14-CV-00785, 2018 WL 1513303, at *12–13 (M.D. Pa. Mar. 27, 2018). 15
*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ........ 18
*Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461–62 (5th Cir. 1994) ........11
*T & S Brass & Bronze Works, Inc. v. Pic-Air, Inc.*, 790 F.2d 1098, 1106 (4th Cir. 1986)........ 18
*Thompson v. Ross*, 2010 WL 3896533, at *5 (W.D. Pa. Sept. 30, 2010) ........ 20
*Tryco, Inc. v. U.S. Med. Source, L.L.C.,* 80 Va. Cir. 619 (Fairfax Cnty. Cir. Ct. 2010) ........ 7
*United States v. Steiger*, 318 F.3d 1039, 1048–49 (11th Cir. 2003)........11, 13, 14

*Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 612 (E.D. Va. 2005) ..... 5, 6
*Wilks v. Commonwealth*, 217 Va. 885, 886, 234 S.E.2d 250 (1977) ..... 10
*WJLA-TV v. Levin*, 264 Va. 140, 160 n.5, 564 S.E.2d 383 (2002) ..... 5, 6

**Statutes**

§ 18.2-152.3 ..... 1
§ 18.2-152.5 ..... 1
Va. Code § 18.2-152.12 ..... 1
Va. Code § 8.01-581.02(C)–(D) ..... 19
Va. Code.§ 8.01–40 ..... 5

**Rules**

Fed. R. Civ. P. 81(c)(1) ..... 4
Rule 12(b)(6) ..... 4

## I. INTRODUCTION.

What Plaintiff David Todd Harris pleads is a domestic dispute over access to one iPad; what he asserts is six separate causes of action. The gap between the two is the problem with the Complaint. The underlying facts, however, are relatively straightforward. Plaintiff alleges that when he moved out of the former marital residence in September 2022, he mistakenly left behind an iPad that he rarely used. The device remained connected to his Apple ID and synchronized with his iCloud account, and Plaintiff claims that Ms. Augstums later used the iPad to view text messages, photographs, notes, and location information that were available through the device. He further alleges that she photographed, screenshotted, or otherwise copied some of that information. Plaintiff did not discover that the iPad remained at the residence until January 2026—more than three years after he moved out. Compl. ¶¶ 6–32.

Those allegations do not support the six causes of action Plaintiff asserts. Count I fails because Plaintiff does not allege any identifiable injury to his person or property resulting from the alleged violations of the Virginia Computer Crimes Act, as required by Va. Code § 18.2-152.12. His specific theories under that statute are also deficient: he does not identify protected employment, financial, or identifying information that Ms. Augstums actually examined under § 18.2-152.5, and his § 18.2-152.3 theory simply labels the alleged viewing or copying of data as a "conversion" without pleading facts showing that a conversion occurred. Counts II and IV likewise fail because the Complaint does not identify any communication that Ms. Augstums actually acquired while it was being transmitted. Instead, Plaintiff asks the Court to infer an interception from the frequency with which she allegedly used the iPad and the fact that she sometimes viewed location information in "real time." Those allegations do not plausibly establish the contemporaneous interception required by either the federal or Virginia wiretap statutes.

The remaining claims fare no better. Count III does not allege facts showing that Ms. Augstums obtained any communication from a provider-side electronic communications facility, rather than viewing information already stored on the iPad itself. The fact that the device remained synchronized with iCloud does not, without more, establish a Stored Communications Act violation. Count V fails whether directed at Plaintiff's broadly defined "Private Information"—intangible information that is not subject to conversion under Virginia law—or the physical iPad, which Plaintiff does not allege he ever demanded be returned. And to the extent Plaintiff's conversion theory depends upon establishing that the iPad was exclusively his property and that Ms. Augstums had no possessory interest in it, that antecedent property dispute is subject to the parties' agreed collaborative process and binding arbitration. Finally, Count VI should be dismissed with prejudice because Virginia simply does not recognize the common-law intrusion-upon-seclusion claim Plaintiff has pled.

For these reasons, the Complaint does not state a viable claim against Ms. Augstums and should be dismissed as set forth below.

## II. Factual Background.

Plaintiff and Ms. Augstums were formerly married, and they separated in September 2022. Compl. ¶¶ 3–5. Plaintiff alleges that when he moved from the former marital residence, he left behind an iPad Mini that he did not frequently use. *Id.* ¶¶ 6–12.

According to the Complaint, the iPad remained associated with Plaintiff's Apple ID and iCloud account. *Id.* ¶ 9. Plaintiff alleges that Ms. Augstums subsequently used the iPad to view what he collectively calls his "Private Information," which he defines to include text messages, notes, photographs, location data, internet and browser histories, work files, information synchronized through iCloud, and copies, screenshots, summaries, or other reproductions of that

information. *Id.* ¶ 18. Notwithstanding this broad definition of "Private Information," the Complaint's factual allegations only allege that Ms. Augstums viewed his text messages, notes, photographs and location data.

According to the Complaint, Ms. Augstums was able to access and open the iPad, but Plaintiff has not alleged the iPad was secured by a passcode, FaceID or TouchID, the three ways that Apple allows users to protect their iPads. *See id*. ¶ 19. Plaintiff further alleges that, beginning in July 2024, Ms. Augstums made statements suggesting that she knew information concerning Plaintiff's whereabouts, activities, romantic relationship, and other personal affairs. *Id.* ¶¶ 22–25.

Plaintiff claims that even though the iPad was allegedly connected to and syncing with his iCloud account, he somehow did not know the iPad had been left at the marital residence and did not suspect that Ms. Augstums was using it until January 2026, almost three years after the iPad was abandoned. *Id.* ¶¶ 26–27. His allegations concerning how the device was allegedly used are largely based upon statements attributed to former (unidentified) au pairs of Plaintiff and Ms. Augstums. According to Plaintiff, one former au pair claimed that Ms. Augstums used the device to check Plaintiff's location, read messages, view photographs, photograph material appearing on the iPad screen, and maintain copies of certain information. *Id.* ¶ 28.

Notably, Plaintiff is merely alleging that the "misplaced" iPad was connected to his iCloud account, and his iPad used iCloud's various services to save his text messages, photographs, notes and location services to that device (which he was sending from other Apple devices) so that such information could be viewed on the abandoned iPad. *See Id.* ¶¶ 18, 28.

The Complaint does not allege that Ms. Augstums installed interception software, configured an automatic forwarding mechanism, captured data packets, altered Plaintiff's

messaging settings, or otherwise acquired any particular communication while it was being transmitted. Instead, Plaintiff alleges:

> Therefore, Plaintiff reasonably believes and alleges, that Defendant acquired and viewed at least some of Plaintiff's Private Information contemporaneously with the transmission of such Private Information.

*Id.* ¶ 29.

Likewise, although Plaintiff alleges that information accessible through his devices may have included employment, salary, credit, banking, password, or other identifying information, he does not identify any such information that Ms. Augstums actually examined. Instead, he alleges only that, "[b]ecause of Defendant's pervasive and frequent use" of the iPad, he "reasonably believes" she must have viewed "some" unidentified information falling within those categories. *Id.* ¶¶ 30–31. Nor does Plaintiff allege that Ms. Augstums separately logged into his iCloud account, entered a password, bypassed any security feature, or otherwise circumvented access controls to view his text messages, photographs, notes, or location information. Rather, the Complaint alleges that the iPad remained logged into and synchronized with Plaintiff's iCloud account, making that information available through the device itself. *Id.* ¶¶ 18, 28. From these allegations, Plaintiff asserts claims under the Virginia Computer Crimes Act (Count I), the Virginia interception statute (Count II), the federal Stored Communications Act (Count III), the federal Wiretap Act (Count IV), conversion (Count V), and common-law invasion of privacy (Count VI).

## III. STANDARD OF REVIEW.

Federal pleading standards govern following removal. Fed. R. Civ. P. 81(c)(1). To survive a motion under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court accepts well-pleaded facts as true, "[s]tatements of bare legal conclusions are not entitled to the assumption

of truth and are insufficient to state a claim." *Hately v. Watts*, 917 F.3d 770, 781 (4th Cir. 2019) (citation omitted).

A plaintiff's allegations must raise the asserted right to relief above the speculative level. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a plaintiff cannot bridge a gap in the elements of his claim simply by alleging that, because certain conduct was possible, he "believes" it must have occurred.

## IV. ARGUMENT.

### A. *Count VI Should Be Dismissed With Prejudice Because Virginia Does Not Recognize a Common-Law Claim for Intrusion Upon Seclusion.*

Count VI can be disposed of as a matter of law. While Plaintiff titles this claim as "Invasion of Privacy," this cause of action asserts that Ms. Augstums "intentionally and maliciously intruded into Plaintiff's private affairs and concerns," that Plaintiff had a reasonable expectation of privacy, and that the alleged intrusion was "highly offensive to a reasonable person." Compl. ¶¶ 61–63. Those allegations unmistakably invoke the common-law privacy tort commonly known as intrusion upon seclusion.

Simply put, it is well-established that Virginia does not recognize a cause of action for intrusion upon seclusion or for common-law "invasion of privacy." See *Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 424 (E.D. Va. 2021) ("Virginia does not recognize a common law cause of action for invasion of privacy or intrusion upon seclusion."); *WJLA-TV v. Levin*, 264 Va. 140, 160 n.5, 564 S.E.2d 383 (2002) (Virginia General Assembly's decision to only codify cause of action for invasion of privacy through misappropriation of name or likeness for commercial purposes (Va. Code.§ 8.01–40) effectively barred claims for "intrusion upon seclusion" and other common law "invasion of privacy" torts); *accord Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 612 (E.D. Va. 2005) ("Va. Code.§ 8.01–40 provides the only remedy under

Virginia law for a claim of invasion of privacy." (citation omitted)). Plaintiff does not allege that Ms. Augstums used his name, portrait, photograph, voice, or likeness for advertising or trade purposes as required under Va. Code § 8.01-40. He instead pleads precisely the intrusion-upon-seclusion theory that has been expressly disclaimed as not actionable under Virginia law by *WJLA-TV*, *Cavey* and *Wiest*. Because the pleading defect is legal rather than factual, amendment cannot cure Count VI; thus, Count VI should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### B. *Count I Should Be Dismissed Because Plaintiff Does Not Plausibly Plead a Civil Claim Under the Virginia Computer Crimes Act.*

Count I combines three alleged violations of the Virginia Computer Crimes Act ("VCCA") into a single cause of action: computer fraud under Va. Code § 18.2-152.3, computer trespass under § 18.2-152.4, and computer invasion of privacy under § 18.2-152.5. Compl. ¶¶ 36–39. Each theory is deficient. As a threshold matter, Plaintiff fails to plead facts showing that his person or property was injured by reason of any alleged VCCA violation, as required to maintain a private civil action under § 18.2-152.12. His claims under §§ 18.2-152.3 and 18.2-152.5 also independently fail because he does not plausibly plead the conversion or examination of protected information required by those provisions.

#### (i) <u>Plaintiff does not plead an injury sufficient to maintain a civil VCCA claim.</u>

Regardless of whether Plaintiff adequately alleges conduct prohibited by one or more provisions of the VCCA, the statute does not provide a private cause of action based on the statutory violation alone. Section 18.2-152.12 permits suit only by a person whose "property or person is injured by reason of" a VCCA violation. Va. Code § 18.2-152.12(A). The Fourth Circuit has therefore held that "only a party who is 'injured by reason of a violation'" may maintain a private VCCA action. *OpenRisk, LLC v. MicroStrategy Servs. Corp.*, 876 F.3d 518, 527 (4th Cir.

2017). That requirement applies at the pleading stage. *See Letendre v. Parallon Enterprises, LLC*, No. 3:24-cv-184, 2025 WL 950405, at *15 (E.D. Va. Mar. 28, 2025), *reconsideration denied,* E.D. Va. No. 3:24CV184 (RCY), 2025 WL 2323940 (E.D. Va. Aug. 12, 2025) (dismissing a § 18.2-152.4 claim under Rule 12(b)(6) because the plaintiff failed to allege facts suggesting that he suffered an injury from the alleged computer trespass). Indeed, an actual injury is a "necessary predicate for a civil claim" under § 18.2-152.12. *Id.*; *see also Tryco, Inc. v. U.S. Med. Source, L.L.C.,* 80 Va. Cir. 619, 2010 WL 7373703, at *7 (Fairfax Cnty. Cir. Ct. 2010) (finding no actionable computer trespass where files had been copied, but plaintiff failed to show any resulting injury because the information remained otherwise available and there was no evidence the copied files were accessed or used).

Plaintiff alleges no such injury here. He does not allege that any data was deleted or altered, that he lost access to any information, that his accounts or finances were compromised, that he incurred remediation or investigation expenses, or that the alleged conduct caused any other identifiable injury to his person or property. Instead, he merely states, in conclusory fashion, that Ms. Augstums' conduct "has caused Plaintiff to suffer damages" and later repeats the statutory conclusion that his "property or person was injured." Compl. ¶¶ 33, 39. Nor does Plaintiff's generalized allegation that he became "increasingly distressed" cure that deficiency. That alleged distress arose because Ms. Augstums appeared to know information about his private affairs, causing Plaintiff to believe she was following him or monitoring his girlfriend's social-media activity. Compl. ¶ 25. Plaintiff does not allege that this distress resulted from any particular act of computer fraud, copying, or examination of protected information alleged in Count I. Accordingly, even assuming Plaintiff adequately alleges that Ms. Augstums made screenshots or photographs

sufficient to fall within § 18.2-152.4, he still fails to plead the injury required to maintain a civil action under § 18.2-152.12. Count I should be dismissed on that basis alone.

**(ii) <u>Plaintiff does not plead facts showing computer invasion of privacy under § 18.2-152.5.</u>**

Section 18.2-152.5 is not a general prohibition against viewing private information on a computer. It applies only where a person uses a computer or computer network and "intentionally examines without authority" another person's employment, salary, credit, or specified financial or identifying information. Va. Code § 18.2-152.5(A). To state a claim, Plaintiff must allege facts creating a plausible inference that Ms. Augstums actually examined information falling within one of those enumerated categories. *See Centre Law & Consulting, LLC v. Axiom Res. Mgmt., Inc.*, 456 F. Supp. 3d 765, 771–72 (E.D. Va. 2020); *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 640 (E.D. Va. 2009).

Plaintiff fails to do so. Paragraph 30 of the Complaint alleges only that "some" information contained somewhere among Plaintiff's messages, notes, personal data, or iCloud account fell within one or more statutory categories. Compl. ¶ 30. Paragraph 31 then alleges that, because Ms. Augstums supposedly used the iPad frequently, Plaintiff "reasonably believes" she must have examined "some" unidentified protected information. *Id.* ¶ 31. Access to a device that may contain protected information, however, is not the same as actually examining that information.

*Yessin* is directly instructive. There, an estranged husband allegedly accessed his wife's email account and reviewed sensitive communications concerning her legal strategy in their pending divorce. 686 F. Supp. 2d at 634, 640. The court nevertheless dismissed the § 18.2-152.5 claim because the complaint did not allege facts showing that he actually examined employment, salary, credit, financial, or other statutorily enumerated identifying information. *Id.* at 640.

The same deficiency exists here. Plaintiff identifies messages, photographs, notes, and location information that the former au pair allegedly observed Ms. Augstums viewing. Compl. ¶ 28. None is alleged to contain employment, salary, credit, financial, or statutorily defined identifying information.[1] Plaintiff instead asks the Court to infer that because such information may have existed somewhere on the device or account, Ms. Augstums' alleged frequent use means she must have viewed some of it. That inference is speculative and insufficient under *Twombly* and *Iqbal*. The § 18.2-152.5 theory should therefore be dismissed.

**(iii) <u>Plaintiff does not adequately plead the conversion required by § 18.2-152.3.</u>**

Section 18.2-152.3 applies when a person uses a computer or computer network without authority and actually obtains property or services by false pretenses, commits embezzlement or larceny, or "converts the property of another." Va. Code § 18.2-152.3. Plaintiff invokes only the conversion theory, alleging in conclusory fashion that Ms. Augstums used a computer "without authority, to convert Plaintiff's computer data." Compl. ¶ 36.

But the Complaint never identifies what particular computer data was converted or explains what conduct supposedly constituted its conversion. In *Yessin*, the court rejected a materially similar theory, holding that "the mere act of reading an electronic communication" does not constitute conversion and emphasizing that the computer access must have been undertaken to accomplish a conversion of property. 686 F. Supp. 2d at 639–40. Likewise, in *Cvent, Inc. v. Eventbrite, Inc.*, the court noted that the complaint failed to plead "specific facts giving rise to a plausible inference" of any of the predicate acts required by § 18.2-152.3. 739 F. Supp. 2d 927, 935 (E.D. Va. 2010)

---

[1] Additionally, Plaintiff's allegation that Ms. Augstums "intercepted, viewed, or used . . . communications between Plaintiff and his attorney related to a legal dispute between" the parties cannot state the basis for his VCCA claim for the same reason articulated in *Yessin*. *See* Comp. at ¶ 19; 686 F. Supp. 2d at 640.

Here, Plaintiff separately alleges that Ms. Augstums viewed information and created photographs, screenshots, or other copies, the same conduct on which he expressly bases his § 18.2-152.4 claim. Compl. ¶¶ 28(d)–(e), 37. Paragraph 36 of the Complaint does not identify any additional act constituting conversion; it simply repeats the statutory word "convert." Nor does Plaintiff's broadly defined "Private Information," standing alone, provide a viable conversion theory for the reasons discussed below with respect to Count V. Accordingly, the § 18.2-152.3 theory should also be dismissed.

Count I therefore fails as a whole. Plaintiff has not plausibly alleged the injury required by § 18.2-152.12 to maintain a civil claim based on any alleged VCCA violation. Additionally, his theories under §§ 18.2-152.3 and 18.2-152.5 independently fail because the Complaint does not adequately plead either conversion of property or actual examination of the specific categories of protected information identified by the statute.

### C. *Counts II and IV Fail Because Plaintiff Does Not Plausibly Allege an Interception of a Communication.*

Counts II and IV assert parallel claims under the Virginia and federal wiretap statutes. The Supreme Court of Virginia has recognized that Virginia's statute is "Virginia's version" of the federal Wiretap Act. *Wilks v. Commonwealth*, 217 Va. 885, 886, 234 S.E.2d 250 (1977). The statutes use materially identical operative language. *Compare* 18 U.S.C. § 2511(1)(a), *with* Va. Code § 19.2-62(A). Both define "intercept" in virtually identical terms. *Compare* 18 U.S.C. § 2510(4), *with* Va. Code § 19.2-61.

For that reason, courts in this District apply the same interception analysis under both statutes. In *Yessin*, the Court explained that Virginia's statute "essentially parrots" the federal statute and that the term "intercept" under Va. Code § 19.2-62 should be construed "in precisely the same way as its federal counterpart." 686 F. Supp. 2d at 637. *Centre Law* likewise applied the

contemporaneous-interception requirement to claims under both statutes. 456 F. Supp. 3d at 769–70; *See also Marsh v. Curran,* 362 F. Supp. 3d 320, 327 (E.D. Va. 2019) (recognizing that the federal and Virginia wiretapping statutes have the "same language."). Accordingly, the same contemporaneous-interception requirement applies to both Counts II and IV. If the Complaint does not plausibly allege an interception under the federal Wiretap Act, the parallel Virginia claim fails for the same reason.

**(i) The Wiretap Act requires acquisition during transmission, not subsequent access to stored communications.**

Count IV of the Complaint invokes 18 U.S.C. § 2511(1)(a), (c), and (d). Compl. ¶ 55. Section 2511(1)(a) prohibits the intentional "intercept[ion]" of a wire, oral, or electronic communication. An "intercept" is the acquisition of the contents of such a communication through an electronic, mechanical, or other device. 18 U.S.C. § 2510(4).

Importantly, courts across the U.S. have "uniformly concluded that an intercept ***requires contemporaneity***." *Luis v. Zang*, 833 F.3d 619, 627 (6th Cir. 2016) (emphasis added), citing *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *as amended* (Jan. 20, 2004) ("Every circuit court to have considered the matter has held that an 'intercept' under the [Act] must occur contemporaneously with transmission."); *See also United States v. Steiger*, 318 F.3d 1039, 1048–49 (11th Cir. 2003) ("The Fifth and Ninth Circuits' reasoning is persuasive and we hold that a contemporaneous interception—*i.e.*, an acquisition during 'flight'—is required to implicate the Wiretap Act with respect to electronic communications."); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("We therefore hold that for a website ... to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage."); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461–62 (5th Cir. 1994) (drawing a distinction between (1) acquiring an electronic communication, which is an

intercept, and (2) accessing electronic storage, which is not). The contemporaneity requirement distinguishes between an interception governed by the Wiretap Act from later access to a communication after it has reached electronic storage, which may be covered by other statutes depending on the kind of storage and access.

*Yessin* captures the contemporaneity requirement with a straightforward football analogy:

> these statutes give "intercept" its common meaning, which is perhaps best understood through a football analogy. In American football, a ball can only be intercepted when it is "in flight." Once a pass receiver on the offensive team has caught the ball, the window for interception has closed, and defenders can only hope to force a fumble. In essentially the same way, a qualifying "intercept" under the ECPA and Va.Code § 19.2–62 can only occur where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server.

686 F. Supp. 2d 638.

This distinction is also consistent with the statutory framework. The Stored Communications Act, which Plaintiff separately invokes in Count III of the Complaint,[2] addresses unauthorized access to qualifying multi-user electronic communications services while they are maintained in certain covered electronic storage facilities. 18 U.S.C. § 2701(a). The Wiretap Act, in contrast, is directed at the acquisition of communications contemporaneously with their transmission.

The facts, as pled in the Complaint, reflect the alleged *access* of electronically stored information and not interception. Plaintiff alleges that the iPad at issue automatically synced (or downloaded) and locally stored text messages, photographs, notes and location information previously sent or received by Plaintiff. Compl. at ¶ 32. All of these types of information had already been transmitted when, according to the Complaint, Ms. Augstums allegedly opened the

---

[2] Addressed *supra* at Section E.

unprotected iPad and used it to view Plaintiff's already downloaded text messages, photographs, notes, and location information, stored on the iPad and displayed on its screen, as well as when she made screenshots or other copies thereof. Compl. ¶¶ 18–19, 28. These allegations concern information that was already available on or through the iPad and therefore governed by the Stored Communications Act; they do not allege that Ms. Augstums intercepted any particular electronic communication while it was actually in transit.[3]

Indeed, *Hately* underscores this difference. There, the Fourth Circuit held that previously delivered and opened email maintained by a web-based email provider may remain in protected "electronic storage" for purposes of the Stored Communications Act. 917 F.3d at 785–96. *Hately* underscores the statutory distinction between communications in transmission and communications maintained in electronic storage. 917 F.3d at 785–96. And, as *Yessin* directly holds, accessing an electronic communication after it has reached its destination does not constitute an "intercept" under the Wiretap Act. 686 F. Supp. 2d at 638.

**(ii) <u>Paragraph 29 of the Complaint Does Not Plausibly Allege a Contemporaneous Interception, and Plaintiff's Reliance on Real-Time Location Information Does Not Cure That Deficiency.</u>**

Apparently recognizing that the Complaint does not otherwise allege the contemporaneous acquisition of any communication, Plaintiff seemingly attempts to bridge that gap in Paragraph 29

[3] Several courts have further parsed this analysis by holding that "the term intercept applies solely to the *transfer* of electronic signals." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (emphasis added). Thus, in the context of electronic communications, "there is a narrow window during which an E-mail interception may occur--the seconds or mili-seconds before which a newly composed message is saved to any temporary location following a send command." *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003). After that point, once a communication has reached its destination, it is no longer in transit and therefore cannot be "intercepted" within the meaning of the Wiretap Act. *Id.* "Therefore, unless some type of automatic routing software is used . . . Interception of E-mail within the prohibition of [the Wiretap Act] is virtually impossible." *Id.* Considering this standard, regardless of what information Ms. Augstums allegedly viewed, it would necessarily have *already reached* its intended destination and could not be "intercepted" at all. *See id.*; *Byrd v. Aaron's, Inc.*, No. CV 11-101, 2012 WL 12887775, at *7 (W.D. Pa. Feb. 17, 2012) ("a qualifying 'intercept' . . . can only occur where a communication is accessed at some point between the time the communication is sent and the time it is received by the destination server."); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3rd Cir. 2003) (emails that had already reached recipient server could not be intercepted).

of the Complaint. There, Plaintiff alleges that, because Ms. Augstums purportedly used the iPad "on a regular basis and with a high degree of frequency," he "reasonably believes" that she "acquired and viewed at least some" of his Private Information "contemporaneously with the transmission" of that information. Compl. ¶ 29. But the frequency with which a person allegedly accesses an iPad does not establish that any particular communication was acquired while it was in transit, any more than frequently passing a construction site establishes that the person witnessed a particular brick being laid.[4]

Plaintiff does not identify any specific communication allegedly intercepted during transmission, when any such interception occurred, the sender or recipient of the communication, any forwarding mechanism or surveillance software, any other technical means by which a communication was allegedly captured in transit, or any witness who observed such an interception. Instead, Plaintiff simply assumes that, because Ms. Augstums allegedly accessed the iPad "frequently," some portion of that access must have happened to coincide with the transmission of an unidentified communication. That type of speculation does not plausibly plead the contemporaneous interception required by the statute and does not cross the line from possibility to plausibility required by *Twombly* and *Iqbal*.

Plaintiff also cannot supply the missing interception by alleging that Ms. Augstums sometimes viewed his location information in "real time." Compl. ¶ 29. Congress expressly excluded from the Wiretap Act's definition of "electronic communication" "any communication from a tracking device." 18 U.S.C. § 2510(12)(C). A "tracking device," in turn, includes an electronic or mechanical device that permits the tracking of the movement of a person or object. 18 U.S.C. § 3117(b). Virginia law contains a materially similar exclusion. Va. Code § 19.2-61

[4] Alternatively, under the *Steiger* standard, a person could use an iPad *ad infinitum* and *never* intercept any communications, similarly to how a person could never snatch a speeding bullet out of the air. *See supra* Note 3.

excludes from the definition of "electronic communication" "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or object."

Thus, even accepting Plaintiff's allegation that Ms. Augstums viewed device location information in real time, that allegation does not establish the interception of a qualifying electronic communication under either the federal or Virginia statute. Paragraph 29 of the Complaint therefore does not cure the fundamental pleading defect in Counts II and IV.

**(iii) Plaintiff pleads no interception of an oral communication.**

Counts II and IV also repeatedly refer to "oral communications." Compl. ¶¶ 41–44, 52–55. Yet not a single factual allegation identifies an oral conversation allegedly recorded, overheard, or otherwise acquired through a device—or how Ms. Augstums would have been able to surreptitiously intercept such conversations in real time. Merely reciting the statutory phrase "wire, electronic, or oral communications" does not plead an oral-interception claim.

**(iv) The derivative disclosure and use theories fail without an unlawful interception.**

Plaintiff's separate allegations that Ms. Augstums used or disclosed the contents of his communications fare no better. Compl. ¶¶ 42–43, 53–54. Sections 2511(1)(c) and (d) require that the communication first must have been obtained through an unlawful interception and that the defendant knew or had reason to know of that unlawful interception. *See Ott v. Goodwin*, No. 4:14-CV-00785, 2018 WL 1513303, at *12–13 (M.D. Pa. Mar. 27, 2018) (explaining that liability for disclosure requires both an unlawful interception and knowledge, or reason to know, that the information was obtained through that unlawful interception); *Noel v. Hall*, 568 F.3d 743, 749–51 (9th Cir. 2009) (holding that listening to or copying previously captured communications does not constitute a new interception and recognizing that the use-and-disclosure provisions protect communications that were unlawfully intercepted).

Here, Plaintiff alleges only that Ms. Augstums later viewed, copied, showed, or used information already stored on or accessible through the iPad. Compl. ¶¶ 18–19, 28. Because the Complaint does not plausibly allege that any such information was first obtained through a qualifying unlawful interception, Plaintiff cannot state a derivative use or disclosure claim under §§ 2511(1)(c) or (d). The parallel Virginia-law theories fail for the same reason. Accordingly, Counts II and IV should be dismissed.

### D. *Count V Fails Because Plaintiff Does Not Identify the Property Allegedly Converted, and Neither Possible Theory States a Viable Claim.*

Count V does not clearly identify what Plaintiff contends Ms. Augstums converted. Plaintiff alleges that Ms. Augstums exercised dominion and control over both the physical iPad and the "Private Information" stored on or accessible through it, without identifying which property forms the basis of his conversion claim. Compl. ¶¶ 57–59. This ambiguity is itself problematic. *See American Conservative Union v. Institute for Legislative Analysis*, No. 1:24-cv-500, 2025 WL 510236, at *10 (E.D. Va. Feb. 13, 2025) (dismissing conversion claim where, among other deficiencies, "it is unclear what has been converted"). More importantly, either possible theory fails.

To the extent Plaintiff alleges conversion of his "Private Information," including communications, photographs, notes, and location information, the claim is not cognizable under Virginia law. Although conversion generally protects tangible property, Virginia recognizes conversion of intangible rights only where those rights arise from or are merged into a document evidencing the property right, such as a stock certificate, promissory note, or bond. *Mackey v. McDannald*, 298 Va. 645, 659, 842 S.E.2d 379, 387 (2020). Applying *Mackey*, in *American Conservative Union* the Eastern District of Virginia dismissed a conversion claim premised on confidential, proprietary, trade-secret, and other non-public information because it constituted

intangible property not subject to conversion. 2025 WL 510236, at *10. Plaintiff's alleged "Private Information" is no different.

Further, the alleged access of Plaintiff's supposed "Private Information" is not, on its own, a conversion as there is no factual allegation to show that such access was for the purpose of "accomplishing a conversion," but instead to allegedly give Ms. Augstums an upper-hand in case a custody dispute arose. Compl. at ¶ 28(e); *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 640 (E.D.Va. 2009). In *Yessin*, the defendant-husband had allegedly accessed and intercepted his estranged wife's business e-mail account through accessing her employer's Internet Service Provider's electronic email communication service network, without authorization, and reviewed messages between the wife and her attorney related to the pending contested divorce proceeding. *Yessin*, 686 F. Supp. 2d at 633-34. As the "purported access of the computer network" in *Yessin* was, per the complaint, to "gain an advantage in divorce proceedings," the court held no conversion could have occurred. *Id*. at 640. The same applies here: the Complaint alleges that Ms. Augstums' supposed access was for the purpose of gaining an advantage if a custody dispute over the Parties' daughters arose.

If Count V instead concerns the physical iPad, the claim suffers from a separate defect: Plaintiff never alleges that he demanded its return. That omission is significant because, where a defendant initially obtains possession of property lawfully, continued possession does not become a conversion until the owner demands its return and the defendant refuses. *American Conservative Union*, 2025 WL 510236, at *10 (dismissing conversion claim concerning former employee's retention of employer's laptop because, where possession was originally lawful, the absence of any allegation that the plaintiff demanded return meant that the plaintiff had not plausibly alleged wrongful dominion); *see also T & S Brass & Bronze Works, Inc. v. Pic-Air, Inc.*, 790 F.2d 1098,

1106 (4th Cir. 1986) ("The refusal to return a chattel upon the demand of the rightful owner is conversion.").

Here, Plaintiff alleges that the iPad remained in Ms. Augstums' residence for two and a half years after he moved out, and that he did not even discover that he had left it there until January 2026. Compl. ¶¶ 6, 12. Yet the Complaint conspicuously omits any allegation that, after making that discovery, Plaintiff asked Ms. Augstums to return the iPad or made any attempts to secure same. Instead, Plaintiff only baldly asserts that Ms. Augstums should have known the iPad belonged to him (without explaining how she should have known this) and that, if Plaintiff had known the iPad was there, "he would have asked Defendant to return" it. Compl. ¶ 14. Plaintiff does not allege that he ever actually made such a request, that Ms. Augstums refused one, or even that he asserted a right to immediate possession before filing this lawsuit. As in *American Conservative Union*, the absence of any demand or refusal defeats a conversion theory premised upon the continued possession of property that was not wrongfully acquired in the first instance. 2025 WL 510236, at *10

Moreover, to the extent Plaintiff contends that no demand was necessary because the iPad was always his exclusive property and Ms. Augstums had no lawful possessory interest in it, that contention presents a threshold ownership dispute governed by the parties' Collaborative Property and Support Settlement Agreement ("CSA"), attached hereto as **Exhibit 1**[5]. The CSA expressly

---

[5] Although Plaintiff did not attach the Final Order of Divorce or the Collaborative Property and Support Settlement Agreement dated February 24, 2023 (the "CSA"), the Court may consider both without converting this Motion into one for summary judgment. The Complaint expressly references the Final Order of Divorce. Compl. ¶ 3. Courts may consider documents incorporated by reference, documents integral to the complaint, and matters of public record at the Rule 12(b)(6) stage. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also McArthur v. Brabrand*, 610 F.Supp.3d 822, 831 n.2 (E.D. Va. 2022) (noting a court may take judicial notice of facts in the public record not subject to reasonable dispute without converting a motion to dismiss into a motion for summary judgment). The Final Order, attached hereto as **Exhibit 2**, is a public record. See *United States v. Swift*, 53 M.J. 439, 453–54 (C.A.A.F. 2000) ("[t]he divorce decree is the type of record customarily kept by a party; and it is a public record"). The Final Order expressly "ratified, affirmed, approved, and incorporated, but not merged" the CSA and ordered the parties to comply with its terms. Final Order ¶

addresses the disposition of the parties' movable personal property and provides that any disagreement over whether an item constitutes one party's separate or personal property, or over the division of the parties' remaining personal property, must first proceed through the collaborative process and, if unresolved, be submitted to binding arbitration. CSA ¶ 5(b)(v). Plaintiff therefore cannot establish his conversion claim simply by assuming the very ownership and immediate possessory rights that Ms. Augstums disputes and that the parties agreed to resolve through arbitration. *See* Va. Code § 8.01-581.02(C)–(D) (providing for arbitration and a stay of judicial proceedings as to issues subject to an arbitration agreement).

Thus, Count V fails under either interpretation. If the alleged property is Plaintiff's "Private Information," it is intangible information not subject to conversion under Virginia law. If the alleged property is the physical iPad, Plaintiff does not allege that he ever demanded its return or that Ms. Augstums refused such a demand. And, to the extent Plaintiff contends that Ms. Augstums' possession was wrongful from the outset because the iPad was his exclusive property, the parties dispute that ownership premise, and the CSA commits that antecedent property dispute to arbitration. Count V should therefore be dismissed or, at minimum, stayed to the extent resolution of the claim depends upon arbitrable ownership of the iPad.

### E. ***Count III Should Be Dismissed Because Plaintiff Has Not Alleged a Violation of the Stored Communications Act (18. U.S.C. §§ 2701, et seq.).***

Count III should be dismissed because the Complaint does not plausibly allege that Ms. Augstums accessed a "facility through which an electronic communication service is provided" and obtained a communication while it was in "electronic storage," as required by 18 U.S.C. §

2. Under Virginia Code § 20-109.1, an incorporated settlement agreement becomes a term of the decree and is enforceable as such. *See Mayers v. Mayers*, 15 Va. App. 587, 592, 425 S.E.2d 808, 811 (1993); *Forrest v. Forrest*, 3 Va. App. 236, 240, 349 S.E.2d 157, 160 (1986) ("Code § 20–109.1 does not require the trial court to conduct a separate inquiry into the validity of a property settlement agreement which appears valid on its face"). Accordingly, the Court may consider the CSA, including its arbitration provision, in resolving this Motion.

2701(a). Courts distinguish between communications stored on a service provider's system and information already stored on a user's own device. An iPad or similar device that simply allows a user to access an electronic communications service is not itself a protected "facility" under the SCA. *See Garcia v. City of Laredo*, 702 F.3d 788, 792–93 (5th Cir. 2012); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057–59 (N.D. Cal. 2012).

Here, Plaintiff alleges that the iPad remained logged into and synchronized with his Apple ID and iCloud account and that Ms. Augstums used the device to view text messages, photographs, notes, and location information. Compl. ¶¶ 9, 28. But the Complaint never identifies any communication that Ms. Augstums actually retrieved from Apple's servers, as opposed to information already available on the iPad itself. Paragraph 32 of the Complaint simply concludes that, because the device was synchronized with iCloud, Ms. Augstums must have accessed a protected facility. Compl. ¶ 32. That is not enough. *See Jones v. Abel*, No. 25-cv-779 (LJL), 2025 WL 2821370, at *6–7 (S.D.N.Y. Oct. 3, 2025) (dismissing SCA claim where allegations did not plausibly show that communications were accessed from cloud storage rather than from the physical phone); *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F.Supp.2d 311, 337 (D.D.C. 2011) ("It is entirely non-controversial that 'e-mail messages downloaded and stored on, and subsequently accessed solely from, a user's personal computer do[] not fall within the SCA's definition of electronic storage.'" (quoting *Thompson v. Ross*, 2010 WL 3896533, at *5 (W.D. Pa. Sept. 30, 2010)). Accordingly, Plaintiff has not plausibly alleged the provider-side access required by § 2701(a), and Count III should be dismissed.

## V. CONCLUSION.

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Counts I through VI for failure to state a claim upon which relief can be granted. In the alternative, to the

extent Count V depends on resolution of the parties' disputed ownership rights in the iPad, Defendant requests that the Court stay that claim pending completion of the arbitration process required by the parties' Collaborative Property and Support Settlement Agreement.

Dated: September 2, 2026

Respectfully Submitted,

__/s/ Andrew J. Smith______________
Andrew J. Smith, Esq. (VSB No. 81538)
Cala Dossey, Esq. (VSB No. 100140)
Berenzweig Leonard, LLP
8300 Greensboro Drive; Suite 1250
McLean, Virginia 22102
Telephone: (703) 760-0402
Facsimile: (703) 462-8674
dsmith@berenzweiglaw.com
cdossey@berenzweiglaw.com
*Counsel for Defendant Ieva Augstums*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent by electronic mail and first-class mail to the following on September 2, 2026:

David N. Goldberg, Esq. (VSB No. 33468)
Offit Kurman, P.C.
8000 Towers Crescent Drive, Suite 1400
Tysons Corner, VA 22182
Telephone: (703) 745-1817
Facsimile: (703) 745-1835
dgoldberg@offitkurman.com
*Counsel for Plaintiff*

_/s/ Andrew J. Smith_______
Andrew J. Smith, Esq.