# Exhibit 2

VIRGINIA:

IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | | |
|---|---|---|
| DAVID TODD HARRIS, Plaintiff, | * | |
| | * | CL NO. 2023-13996 |
| IEVA AUGSTUMS, Defendant. | * | |

**FINAL ORDER OF DIVORCE**

THIS CAUSE came on upon the Complaint for Divorce filed by the Plaintiff, DAVID TODD HARRIS ("Husband"); upon the Answer filed by the Defendant, IEVA AUGSTUMS ("Wife"); and upon the testimony of the Husband by the sworn Affidavit filed herein; and

IT APPEARING TO THE COURT THAT:

1. The Plaintiff is an actual and bona fide resident and domiciliary of the Commonwealth of Virginia and has been such for more than six months immediately preceding the institution of this suit.

2. The parties were lawfully married on September 14, 2013 in Beaver Creek, Colorado.

3. There were two children born of the parties' marriage, namely: Emilija Harris, born April 2, 2015, and Sabine Harris, born February 23, 2017. No children were born of one party and adopted by the other, or adopted by both parties of the marriage, and no additional children are expected of the marriage. To the best of Plaintiff's knowledge, neither party is currently pregnant.

4. Both parties are over the age of 18 years.

5. Neither party is a member of the Armed Forces of the United States.

6. Both parties are of sound mind.

12/13/23 Em: πAtty; ΔAtty | cc: πAtty; ΔAtty

7. The parties have lived separate and apart, without interruption and without any cohabitation for more than one year, to-wit: since September 11, 2022, from which date to present at least one of the parties has intended the separation to be permanent.

8. The parties entered into a written and signed *Collaborative Property and Support Settlement Agreement* and *Parenting Plan* dated February 24, 2023 concerning and resolving all matters pertaining to support, custody, property, and other incidents of their marriage.

9. There is no hope or possibility of reconciliation between the parties.

**NOTICES AND INFORMATION:**

A. Pursuant to the requirements of Va. Code Ann. § 20-111.1(E), the following notice is provided to the parties:

> **NOTICE IS HEREBY GIVEN THAT BENEFICIARY DESIGNATIONS FOR ANY DEATH BENEFIT, AS DEFINED IN SUBSECTION B OF § 20-111.1 OF THE CODE OF VIRGINIA, MADE PAYABLE TO A FORMER SPOUSE MAY OR MAY NOT BE AUTOMATICALLY REVOKED BY OPERATION OF LAW UPON THE ENTRY OF A FINAL DECREE OF ANNULMENT OR DIVORCE. IF A PARTY INTENDS TO REVOKE ANY BENEFICIARY DESIGNATION MADE PAYABLE TO A FORMER SPOUSE FOLLOWING THE ANNULMENT OR DIVORCE, THE PARTY IS RESPONSIBLE FOR FOLLOWING ANY AND ALL INSTRUCTIONS TO CHANGE SUCH BENEFICIARY DESIGNATION GIVEN BY THE PROVIDER OF THE DEATH BENEFIT. OTHERWISE, EXISTING BENEFICIARY DESIGNATIONS MAY REMAIN IN FULL FORCE AND EFFECT AFTER THE ENTRY OF A FINAL DECREE OF ANNULMENT OR DIVORCE.**

1. Support payments may be withheld as they become due pursuant to §20-79.1 or §20-79.2, from income as defined in §63.2-1900, without further amendments of this Order or having to file an application for services with the Department of Social Services.

2. Support payments may be withheld pursuant to Chapter 19 (§63.2-1900, et seq.) of Title 63.2 without further amendments to the order upon application for services with the Department of Social Services.

3. A duty of support is owed for the following children of the parties:

| Name | Date of Birth | Last 4 digits-SSN |
|---|---|---|
| Emilija Harris | April 2, 2015 | x8929 |
| Sabine Harris | February 23, 2017 | x8043 |

4. The following is true information regarding the parties subject to this Order:

| | Plaintiff | Defendant |
|---|---|---|
| Name: | David Todd Harris | Ieva Augstums |
| DOB: | August 24, 1971 | April 17, 1979 |
| SSN: | See Private Addendum | See Private Addendum |
| Driver's License No.: | VA DL #: B60057598 | VA DL#: B60057599 |
| Address: | 1970 Rockingham St.<br>McLean, VA 22101 | 6004 Woodley Road,<br>McLean, Virginia, 22101 |
| Phone Number: | 202-412-4604 | (703) 907-9679 |
| Employment: | Something Else | Speech & Language Center of Northern Virginia |
| Employer Address: | 212 Golden Willow Court<br>Easley, SC 29642 | 1125 Savile Lane<br>McLean, Virginia 22101 |
| Employer Telephone: | 864-640-3626 | 703-356-2833 |

5. Pursuant to §20-124.2, support will continue to be paid for any child over the age of 18 who is: (i) a full-time high school student, (ii) not self-supporting, and (iii) living in the home of the party seeking or receiving child support until such child reaches the age of 19 or graduates from high school, whichever occurs first, and that the court may also order that support be paid or continue to be paid for any child over the age of 18 who is (a) severely and permanently mentally or physically disabled, and such disability existed prior to the child reaching the age of 18 or the age 19 if the child met the requirements of clauses (i), (ii), and (iii); (b) unable to live independently and support himself/herself, and (c) residing in the home of the parent seeking or receiving child support;

6. A petition may be filed for the suspension of any license, certificate, registration or other authorization to engage in a profession, trade, business, occupation, or recreational activity

issued by the Commonwealth of Virginia to a parent as provided in §63.2-1937, upon a delinquency in child support for a period of ninety days or more or in an amount of $5,000 or more. **Neither party holds such a license or registration.**

7. The order of this Court as to the monthly amount and terms of child and spousal support and the effective date of the Order is set forth in the support provisions of this Order, and same are expressed in fixed sums, together with the payment interval, the date payments are due, and the date the first payment is due.

8. a. The order of this Court as to health care coverage, including health insurance policy information, for dependent children pursuant to §20-108.1 and §20-108.2, if available at a reasonable cost as defined by Va. Code § 63.2-1900, is set forth in the health care provisions of this Order. In addition, this Order contains a statement as to whether health care coverage is ordered for a spouse or former spouse.

b. This Order contains a statement whether cash medical support, as defined in §63.2-1900 is to be paid by or reimbursed to a party pursuant to Subsections D and G of § 20-108.2, and if such expenses are ordered, then the provisions governing how such payment is to be made.

9. If child or spousal support arrearages exist, then this Order shall contain: (i) to whom the arrearage is owed; (ii) the amount of the arrearage; (iii) the period of time for such the arrearage is calculated. Payments made on such arrearages shall be credited to current support obligations first, with any payment in excess of the current obligation applied to arrearages.

10. If child or spousal support payments are ordered to be paid, and unless the court for good cause shown orders otherwise, the parties shall give each other and the court and, when payments are to be made through the Department, the Department of Social Services at least 30

days' written notice, in advance, of any change of address, and any change of telephone number within 30 days after the change.

11. If child support payments are ordered to be paid through the DSS, the obligor shall keep the DSS informed, or if the payments are ordered to be paid directly to the obligee, keep the court informed of (i) the name, address, and telephone number of his current employer, (ii) any change to his employment status, and (iii) if he has filed a claim for or is receiving benefits under the provisions of Title 60.2. Any change in employment status or filing of a claim shall be communicated to the DSS or the court in writing within 30 days of such change or filing.

12. If child support payments are ordered to be paid through the DSS, then the parent obligated to provide health care coverage shall keep the DSS informed of any changes in the availability of the health care coverage for the minor child or children, or if payments are ordered to be paid directly to the obligee, then the party obligated to provide health care coverage shall keep the other party informed of any changes in the availability of such coverage for the minor child or children.

13. The separate amounts due to each person under this Order for child support and for spousal support are set forth in the support provisions of this Order.

14. In determination of a child or spousal support obligation, the support obligation as it becomes due and unpaid creates a judgment by operation of law. Pursuant to §20-78.2, interest shall accrue on any arrearage at the judgment-rate as established in §6.2-302, unless the obligee, in a writing submitted to this Court, waives the collection of interest.

15. The Department of Social Services may, pursuant to Chapter 19 (§63.2-1900, et seq.) of Title 63.2 and in accordance with §20-108.2 and §63.2-1921, initiate a review of the amount of support ordered by any court.

16. If any arrearages for child support, including interest or fees, exist at the time the youngest child included in this order emancipates, payments shall continue in the total amount due (current support plus amount applied toward arrearages) at the time of emancipation until all arrearages are paid.

17. In cases enforced by the Department of Social Services, the Department of Motor Vehicles may suspend or refuse to renew the driver's license or other document issued under Chapter 3 (§46.2-300 et. Seq.) of Title 46.2 authorizing the operation of a motor vehicle upon the highways, of any person upon receipt of notice from the Department of Social Services that the person (i) is delinquent in the payment of child support by 90 days or in an amount of $5000 or more or (ii) has failed to comply with a subpoena, summons, or warrant relating to paternity or child support proceedings..

WHEREUPON, in consideration whereof,

IT IS **ADJUDGED** and **ORDERED** as follows:

1. **DIVORCE**. The Plaintiff is hereby granted a Final Order of Divorce, *a vinculo matrimonii*, from the Defendant pursuant to Virginia Code § 20-91(A)(9)(a), as amended, on the grounds that the parties have lived separate and apart, without cohabitation and without interruption for a period of more than one year, to wit, since on or about September 11, 2022, from which date to present at least one of the parties intended the separation to be permanent; and the bonds of matrimony are hereby forever dissolved.

2. **AGREEMENTS INCORPORATED.** The *Collaborative Property and Support Settlement Agreement* and *Parenting Plan* dated February 24, 2023 are ratified, affirmed, approved, and incorporated, but not merged, into this Final Order of Divorce pursuant to Virginia Code § 20-109.1, as amended, and the parties are hereby ordered to comply with all terms thereof.

3. **RESERVATION OF JURISDICTION**. Pursuant to Va. Code §20-107.3(K), the jurisdiction of the court is reserved for the entry of such orders as necessary to enforce the terms of the parties' Agreement pursuant to Va. Code §20-109.1.

4. **LEGAL CUSTODY**. Pursuant to the terms of Paragraph 1(A) of the parties' *Parenting Plan* dated February 24, 2023:

> 1. (A) Legal Custody. Parents shall share joint legal custody and jointly make all major parenting decisions together in the areas of education, medical care and mental health, religion, and ongoing extracurricular activities that affect both parents' parenting time.

5. **PHYSICAL CUSTODY**. Pursuant to Paragraph 2(A) of the parties' *Parenting Plan* dated February 24, 2023:

> 2. (A) Regular Physical Custody Schedule. Parents have agreed to a 50/50 custody schedule of one week on/one week off with each parent. The transition from one parent to another will be Monday mornings at the beginning of the school day. If there is no school, camp, or other activity the children will be attending, transfer shall be at the receiving parent's home at 9:00 a.m.

6. **SUPPORT**. Pursuant to Paragraph 7(a) of the parties' Collaborative Property and Support Settlement Agreement dated February 24, 2023:

> 7. REAL PROPERTY.
>
> (a) 6004 Woodley Road, McLean, Virginia. [TERMS OF THIS SECTION REMOVED FOR BREVITY]
>
> (i) [TERMS OF THIS SECTION REMOVED FOR BREVITY]
>
> (ii) Mortgage and Potential Sale.
>
> (1) Mortgage Prior to Todd's Relocation. Todd shall timely pay the monthly mortgage payment (to include principal, interest, and homeowner's insurance comparable to that which is currently in place) on the note encumbering the Woodley Road property from the date this Agreement is executed forward until Todd's Relocation.

(2) Mortgage After Todd's Relocation for 84 Months. Todd shall timely pay the monthly mortgage payment (to include principal, interest, and homeowner' s insurance comparable to that which is currently in place) for 84 months beginning with the first month after Todd's Relocation. Todd shall be permitted to recast this mortgage once for a new 30-year term, paying the first installment ($260,000) of the monetary award set forth in Paragraph 8 of this Agreement toward the principal of the mortgage in connection with the recase. In the event the recast mortgage payment is more than $6,000 per month, Todd shall pay the full amount of the mortgage. Once the recast goes into effect, Todd shall pay $6,000 per month or the mortgage (PITI) payment, whichever is greater, for so long as he is obligated to pay the mortgage. If the mortgage (PITI) payment is less than $6,000, the excess amount paid shall be applied to the principal of the mortgage balance. This obligation to pay the mortgage shall be subject to the termination provisions of the Spousal Support section in this Agreement.

(3) [TERMS OF THIS SECTION REMOVED FOR BREVITY]

(iii) Residence in the House and Todd's Relocation. Both Ieva and Todd will be permitted to remain in the Woodley Road property until September 30, 2023, at which point Ieva shall have exclusive use and possession of the property. "Todd's relocation," as that term is used in this Agreement, means Todd's physically moving out of the property and removing all his movable personal property as well. If Todd inadvertently leaves behind his personal property or property that was previously agreed to by his, upon discovery that the item has been left behind, the parties shall cooperate to arrange for Todd to retrieve the item(s) as soon as possible.

Pursuant to Paragraph 8 of the parties' Collaborative Property and Support Settlement Agreement dated February 24, 2023:

8. MONETARY AWARD. Todd shall pay to Ieva, as a monetary award, neither deductible by Todd, nor taxable to Ieva, for income tax purposes, the sum of $500,000, payable as follows:

| Date of Payment | Amount of Payment |
|---|---|
| Within 15 days after sale of the Florida house | $260,000 (to be applied to the mortgage as noted above) |

| | |
|---|---|
| July 1, 2024 | $60,000 |
| July 1, 2025 | $60,000 |
| July 1, 2026 | $60,000 |
| July 1, 2027 | $60,000 |

No interest shall accrue or be payable as to the aforesaid monetary award unless same is not paid within ten days following the due date as referenced above, in which event interest shall accrue retroactively to the due date and shall continue to accrue at Virginia's statutory judgment rate until payment of the monetary award. Todd may pay any portion of the monetary award prior to the due date without any penalty.

Pursuant to Paragraph 9 of the parties' Collaborative Property and Support Settlement Agreement dated February 24, 2023:

9. SPOUSAL SUPPORT. Todd shall pay to Ieva, as spousal support, the sum of $15,000 per month for 48 months, followed by the sum of $12,000 per month for 36 months; and the mortgage payments set forth in this Agreement shall be deemed to be spousal support payments. The initial payment shall be made on the first day of the month following Todd's relocation from the Woodley Road property as described above, and to continue in consecutive monthly installments on the first day of each month thereafter until the first of the following to occur: 1) the death of either party; 2) Ieva's remarriage; 3) upon order of a court of competent jurisdiction based upon clear and convincing evidence that Ieva has been habitually cohabiting with another person in a relationship analogous to marriage for one year or more unless Ieva proves by a preponderance of the evidence that termination of such support would be unconscionable; or 4) a total of 84 monthly payments are made. Todd's obligation to make mortgage payments as set forth in this Agreement are subject to this termination language as they are considered to be part of his spousal support obligation.

The amount or duration of spousal support contained in this Agreement is not modifiable except as specifically set forth in this Agreement. The duration of support shall be non-modifiable. The amount of support shall be modifiable only in the event that Todd becomes disabled and as a result is unable to continue his current employment.

Todd shall promptly implement an allotment from his checking or other bank account, payable to Ieva by direct deposit into an account Ieva shall designate, as payment of Todd's spousal support obligation as set forth in this Agreement. Todd shall maintain said allotment in effect for so long as he has an obligation to pay spousal support to Ieva. The aforesaid allotment shall be established by Todd in a manner to assure receipt by Ieva in her designated account of spousal support on or before the first day of each month.

Todd hereby waives and releases any rights that he may have for support and maintenance, and agrees that he will at no time hereafter seek or ask, in any manner, any monies of any nature from Ieva, or seek a reservation of right to spousal support; and further, that if proceedings in divorce are or have been instituted by either of the parties, he will not in such proceedings make any such demand.

7. **CHILD SUPPORT.** Pursuant to Paragraph 10 of the parties' Collaborative Property and Support Settlement Agreement dated February 24, 2023:

10. CHILD SUPPORT.

(a) Amount and Duration of Payment. Todd shall pay to Ieva the sum of $4,000 per month for the support and maintenance of their minor children, the first payment to be made on the first day of the month following Todd's relocation from the Woodley Road property as described above, and to continue as to the children in consecutive monthly installments on the first day of each month thereafter until a child attains the age of 18 years, provided that support shall continue to be paid for any child over the age of 18 who is (i) a full-time high school student, (ii) not self-supporting, and (iii) living in the home of the party seeking or receiving child support until such child reaches the age of 19 or graduates from high school, whichever first occurs. The court may also order the continuation of support for any child over the age of 18 who is (i) severely and permanently mentally or physically disabled, (ii) unable to live independently and support herself, and (iii) resides in the home of the parent seeking or receiving child support.

(b) Timeliness of Payments. All payments for support shall be made so that Ieva actually receives the payment on or before the due date at her residence or at such other place designated by her to Todd by prior written notice.

(c) Child Support Computation Method. The parties acknowledge and agree that they are aware of and understand the Virginia statutes applicable to child support, i.e., §§20.107.2, 20-108.1, and 20-108.2 of the 1950 Code of Virginia, as amended. The parties' Parenting Plan grants both parties equal parenting time, however, due to Todd's work commitments, the parties anticipate that the children will spend more than 50% of the time (particularly in election years) with Ieva. Taking this likelihood into consideration and the expectation that Ieva will likely pay for all or the bulk of the children's extracurricular activities with these

funds, Todd has agreed to pay child support in an amount that exceeds the presumptive child support guidelines.

(d) Payment by Allotment. Todd shall promptly implement an allotment from his checking or other bank account, payable to Ieva by direct deposit into an account Ieva shall designate, as payment of Todd's child support obligation as set forth in this Agreement. Todd shall maintain said allotment in effect for so long as he has an obligation to pay child support to Ieva. The aforesaid allotment shall be established by Todd in a manner to assure receipt by Ieva in her designated account of child support on or before the first day of each month.

(e) Work-related childcare. Each party shall be solely responsible for paying for any child care provided by a third-party during his or her parenting time. In the event child support is modified by a Court of competent jurisdiction, the parties agree that any work-related child care shall not be included in any such calculation that occurs prior to the expiration of 48 months after child support payments begin under this Agreement.

8. **ARREAGAGES:** There is no arrearage in child or spousal support as of the date of this Order.

9. **HEALTH INSURNACE/ CASH MEDICAL SUPPORT.** Pursuant to Paragraph 15 and 16 of the parties' Collaborative Property and Support Settlement Agreement dated February 24, 2023:

15. HEALTH CARE COVERAGE. Todd shall maintain for the benefit of the children, and pay the costs of, his present policy of medical insurance for so long as he is obligated to support said children, and shall provide the same coverage for Ieva until the parties' divorce.

Todd shall pay all premiums, dues and assessments on said policy; shall provide Ieva, upon request, with evidence that same is in full force and effect, including the name of the insurer, the name of the plan, the plan number, and Todd's participant number; shall furnish Ieva, upon request, with appropriate claim forms and any additional information necessary to facilitate her rights under this paragraph; and shall make a request for and sign any authorization or other form permitting Ieva to be reimbursed by the insurance carrier for any expenses incurred by her. Todd shall provide Ieva with any prescription cards available to her and/or the children pursuant to said health insurance policy.

Todd shall complete any documents necessary to allow Ieva to have direct contact with the health insurance carrier for the purposes of confirming that said policy is in full force and effect covering her and/or the children and that Todd has complied with the terms of this provision.

Todd agrees to cooperate with Ieva in the event she chooses to extend and/or convert her health insurance coverage under Todd's current health insurance policy in accordance with the provisions of COBRA or of any other similar provision of law or of the provisions of Todd's contract of insurance. Ieva shall be responsible for payment of all costs, fees and premiums in connection with said conversion or extension.

16. CASH MEDICAL SUPPORT. The parties shall pay in proportion to their gross incomes, as used for calculating the monthly child support obligation (currently 15% Ieva, 85% Todd), which may be modifiable based on a change in circumstances, any reasonable and necessary unreimbursed medical or dental expenses for each child who is the subject of the child support obligation after said costs have been submitted to insurance. If one party advances a covered cost, the other party shall reimburse for his or her share within 10 days after the paying party presents documentation showing the charge and payment therefor. If the provider has applied directly to the health insurance carrier for reimbursement, the parties shall pay to the provider his or her pro rata share when the provider deems that a payment is due and owing. Medical or dental expenses shall include but not be limited to eyeglasses, prescription medication, prosthetics, orthodontics, and mental health or developmental disabilities services including but not limited to services provided by a social worker, psychologist, psychiatrist, counselor, or therapist.

**The health insurance policy covering the minor children is provided as a benefit of Plaintiff's employment at Something Else. The policy is held through CareFirst and the group number is 2RBA and the policy number is XIL 901392354. There is no health care provided for the former spouse.**

10. **PRIVATE ADDENDUM**. The Private Addendum containing the parties' confidential information is hereby incorporated by reference into the Final Order of Divorce.

11. Pursuant to Va. Code 20-124.5, thirty days in advance written notice must be given to the court and the other party by any party intending to relocate and of any intended change of address, unless the court, for good cause shown, orders otherwise.

THIS CAUSE IS FINAL.

ENTERED this 08 day of Dec, 2023.

JUDGE

SEEN AND AGREED:

COOPER GINSBERG GRAY, PLLC

By:

David L. Ginsberg, Esquire VSB #40675
9302 Lee Highway, Suite 1200
Fairfax, Virginia 22031
Telephone: 703.934.1480
Facsimile: 703.934.1479
Email: DGinsberg@CGGLawyers.com
*Counsel for Plaintiff*

SEEN AND AGREED:

CURRAN MOHER WEIS, P.C.

By:

Grant T. Moher, Esquire VSB #47196
10300 Eaton Place, Suite 520
Fairfax, Virginia 22030
Telephone: (571) 328-5020
Facsimile: (571) 328-5022
Email: gmoher@curranmoher.com
*Counsel for Defendant*