IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| DAVID TODD HARRIS | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:26-cv-02787-PTG-WBP |
| v. | : | |
| | : | |
| IEVA AUGSTUMS | : | |
| | : | |
| Defendant. | : | |

**<u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>**

Plaintiff David Todd Harris ("Mr. Harris"), by and through undersigned counsel, respectfully submits this Opposition to Defendant Ieva Augstums's ("Ms. Augstums") Motion to Dismiss and the following Memorandum of Points and Authorities in support thereof.

**TABLE OF CONTENTS**


I. Introduction……………………………………………………………………………1

II. Factual Background…………………………………………………………………...1

i. Allegations in the Complaint ……………………………………………………..1

III. Applicable Legal Standard …………………………………………………………...6

IV. Argument……………………………………………………………………………...6

i. Ms. Augstums Violated the Virginia Computer Crimes Act………….………….7

A. Plaintiff Adequately Alleges Injury Under *§ 18.2-152.12*……………………7

B. Plaintiff Adequately Pleads Computer Invasion of Privacy Under *§ 18.2-152.5*………………………………………………………9

C. Plaintiff Adequately Pleads Conversion Under *§ 18.2-152.3*………………..10

ii. Defendant Used an Electronic Device to Contemporaneously Intercept or Attempted to Intercept Mr. Harris's Communications………………………12

iii. Count III States a Claim Under the Stored Communications Act………………15

A. Apple's iCloud Is a "Facility Through Which an Electronic Communication Service is Provided" Under the SCA……………………………………...15

B. Plaintiff's Communications Were in "Electronic Storage" as Defined by the SCA…………………………………………………………………..17

C. The Complaint Plausibly Alleges That Defendant Accessed Communications from iCloud's Electronic Storage, Not Merely From the Physical Device……………………………………………………………………..19

iv. Plaintiff States A Claim for Conversion…………………………………………20

A. Count V is Not Ambiguous Regarding the Property Allegedly Converted….20

B. The Complaint Plausibly Alleges Conversion of the Physical iPad………...21

1. Plaintiff's Ownership Is Established by Well-Pleaded Allegations…21

2. No Demand for Return Was Required Because Defendant's Possession Was Never lawful and She Committed Independent Acts of Dominion………………………………………………………22

C. The Private Information Claim is Also Cognizable………………………23

D. The Collaborative Settlement Agreement Provides No Basis for Dismissal or a Stay……………………………………………………………………..24

1. The CSA is Not Properly Before the Court on This Motion...........24

2. Even If Considered, the CSA Does Not Cover This Tort Claim.........25

v. Cout IV States a Claim for Intrusion upon Seclusion ..................................26

vi. Plaintiff May Pursue Alternative Legal Theories.......................................28

vii. If the Court Finds Any Deficiencies, Leave to Amend Should be Freely Granted....................................................................................29

V. Conclusion..........................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998)……………………………24

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)……………………………………………………6

*A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646–47 (4th Cir. 2009)……………..…..9

*Bainbridge Holdings, LLC v. W. Indus.-N., LLC*, No. 2:22CV418, 2022 WL 22286313 (E.D. Va. Dec. 6, 2022)………………………………………………………………………………6

*Centre Law & Consulting, LLC v. Axiom Res. Mgmt., Inc.*, 456 F. Supp. 3d 765, 772 (E.D. Va. 2020)……………………………………………………………...………………...9,14,16

*Council on American-Islamic Relations v. Gaubatz*793 F. Supp. 2d 311, 337 (D.D.C. 2011)…..20

*Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927 (E.D. Va. 2010)……………………...……12

*DIRECTV Inc. v. Nicholas*, 403 F.3d 223, 225 (4th Cir. 2005)…………………………..…..15,29

*Economopoulos v. Kolaitis*, 259 Va. 806, 814 (2000)………………………………..………..21

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)…………………….….6,29

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)…..…..22

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)……………………………………...……….6

*Foman v. Davis*, 371 U.S. 178, 182 (1962)…………………………………………..…….30

*Garcia v. City of Laredo*, 702 F.3d 788 (5th Cir. 2012)……………………………….....…..16

*Glob. Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 631 (E.D. Va. 2009)………10,11,12,13,14

*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)………………...……….2,25

*Hately v. Watts*, 917 F.3d 770, 781-82 (4th Cir. 2019)………………………….……...9,16,17,18,29

*iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012)……………………...16,17

*Jones v. Abel*, 2025 WL 2821370 (S.D.N.Y. Oct. 3, 2025)...……………………………………19

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)……………………………..…27

*Kremen v. Cohen*, 337 F.3d 1024, 1030–36 (9th Cir. 2003)…………………………………..…24

*Letendre v. Parallon*, No. 1:24-cv-01590, 2025 WL 950405 (E.D. Va. 2025)………………...…8

*Li v. Bristol*, No. 4:24CV59, 2025 WL 3769270, at *12 (E.D. Va. Dec. 5, 2025)………………29

*Lowy v. Daniel Def., LLC*, 167 F.4th 175, 199 (4th Cir. 2026)…………………………...…..10

*Lyons v. Liberty Univ., Inc.*, 2026 WL 2167846, at *5 (W.D. Va. July 28, 2026)………………14

*Mackey v. McDannald*, 298 Va. 645, 659, (2020)……………………………………………….…23

*Marsh v. Curran*, 362 F. Supp. 3d 320, 328 (E.D. Va. 2019)…………………………...……12

*McMillan v. McMillan*, 219 Va. 1127, 1131 (1979)…………………………………….…..27

*Milton v. IIT Rsch. Inst.*, 138 F.3d 519, 522 (4th Cir. 1998)……………………………….…27

*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)…………………...…2,25

*Rosen v. Brookhaven Capital Mgmt. Co.*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002)…………..28

*Rosenkranz v. Rosenkranz*, 111 Va. Cir. 178A (2023)……………………………………..12

*Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740 (4th Cir. 1994)………………………………14

*Shea v. Fridley*, 123 A.2d 1956 (Md. 1956)………………………………………………..…22

*S.R. v. Inova Healthcare Servs.*, 49 Va. Cir. 119 (1999)…………………………...…...7,9

*Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292–93 (2007)……………………..……24

*Tika v. Jack*, No. 3:21-CV-00030, 2022 WL 2955153, at *7 (W.D. Va. July 26, 2022)…………27

*Tryco, Inc. v. U.S. Med. Source, LLC*, 80 Va. Cir. 619 (2010)……………………………..….8

*United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994)………………………..……21

**Statutes**

Va. Code § 18.2-152.5(A)……………………………………………………………………7

Va. Code § 18.2-152.12……………………………………………………………………7,9

Va. Code § 18.2-152.4………………………………………………………………..………7

Va. Code § 19.2-62(A)……………………………………………………………….………..12

Va. Code § 19.2-62(A)(1)……………………………………………………………………..12

Va. Code Ann. § 19.2-61………………………………………………………………6,12

**Rules**

18 U.S.C. §2701(a)……………………………………………………...………………15

18 U.S.C. § 2510(17)…………………………………………………...………………..17

Fed. R. Civ. P. 8(a)(3), (d)(3)……………………………………………………………28

Fed. R. Civ. P. 15(a)(2)……………………………………………………..……………29

Electronic Communications Privacy Act ("ECPA")……………….…………12,14,15,18,29

18 U.S.C. § 2511(1)(a)……………………………………………………………….…12,15

## I. INTRODUCTION

Ms. Augstums's attempts to trivialize this dispute cannot disguise how she intentionally diverted Mr. Harris's personal and business electronic communications for years and used that information to harass him. This suit is far more serious than an ex-wife simply refusing to return her former husband's iPad, as Ms. Augstums tries to paint it. Ms. Augstums chose to maintain Mr. Harris's iPad as a clandestine electronic monitoring system allowing her to capture his communications and even his location in real time, as well as to access more of his data, such as pictures he took, for subsequent review at her leisure. That is precisely the type of misconduct that the federal and state statutes regulating wiretapping and computer crimes guard against. Ms. Augstums copied Mr. Harris's sensitive information and used her monitoring system to interfere with his daily life, taking a disturbing pleasure in the effect she knew it had on her ex-husband. She proudly displayed her capture of Mr. Harris's sensitive information to others. The Complaint painstakingly lays out how Ms. Augstums wrongfully engaged in this activity for years, the damages that she caused Mr. Harris, and how each element of the six claims pleaded are satisfied. Therefore, the Court should deny her Motion to Dismiss in all respects.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### i. <u>Allegations in the Complaint</u>

During the Parties' marriage, they lived together in their home located at 6004 Woodley Road, Mclean, VA (the "Residence"). ECF No. 1-1 ("Compl.") ¶4. Following difficulties in their marriage, the Parties separated on September 11, 2022. Compl. ¶5. On February 24, 2023, the Parties entered into a formal Collaborative Property and Support Settlement Agreement, which

Ms. Augstums attached as Exhibit 1 to her Motion.[1] ECF No. 5-1 (the "CSA"). When Mr. Harris moved out of the Residence, he inadvertently and unwittingly left his iPad Mini (the "iPad") behind at the Residence. Compl. ¶6. The Parties formally divorced on December 8, 2023. Compl. ¶3.

The iPad was not joint or shared property by the couple either in practice or as defined by the CSA, but rather was the sole and exclusive personal property of Mr. Harris. Compl. ¶8; *see also* Defendant's Exhibit 1 §5(b)(i)(iii) ("Both Ieva and Todd shall keep the items they brought into the marriage, and the items they received during the marriage from inheritance or gift outside the marriage." "Todd and Ieva shall both keep their own personal items, to include clothing, jewelry, watches, and other similar items."). Mr. Harris received the iPad as a gift and used it primarily to track and manage his wine collection. Compl. ¶¶7-8. The iPad was registered in Mr. Harris' name and associated exclusively with Mr. Harris's Apple ID and iCloud account. Compl. ¶9. Mr. Harris configured it using his unique credentials, including Apple ID, passwords, and authentication settings. *Id.* The iPad was never registered, linked to, or assigned to Defendant in any capacity. Compl. ¶10. At no time before Mr. Harris moved out did Defendant use or possess the iPad with his knowledge. *Id.* At all relevant times, both before and after the Parties' separation, Defendant knew that the iPad was Plaintiff's sole and exclusive personal property and that she did not have Plaintiff's permission to use or possess the iPad. Compl. ¶11.

Mr. Harris inadvertently left the iPad behind because he possessed multiple similar devices,

---

[1] Defendant improperly attaches two exhibits to her Motion to Dismiss that are not central to or even referenced in the Complaint, which converts the Motion into one for summary judgment. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Therefore, Plaintiff is entitled to discovery before the Court reaches a decision on whether to dismiss any of the counts in his Complaint. Notwithstanding this improper inclusion, both documents actually reinforce Plaintiff's allegations in the Complaint that the iPad at issue was his exclusive personal property and that Ms. Augstums was obligated to return it to him upon her discovery of it at the Residence.

this device was small, and he used it infrequently. Compl. ¶ 12. Once Ms. Augstums obtained the device, she did not notify him and coordinate its return as she was required to do under the Divorce Agreement. Compl. ¶ 14; *see also* CSA § 7(iii) ("If Todd inadvertently leaves behind his personal property or property that was previously agreed to b[e] his, upon discovery that the item has been left behind, the parties shall cooperate to arrange for Todd to retrieve the item(s) as soon as possible."). Instead, Ms. Augstums hid her possession of the device and affirmatively maintained its link with his Apple profile and accompanying records rather than linking it to her own personal profile and discontinuing its recording of Mr. Harris's data. Compl. ¶¶ 14–16.

After the Parties' separation, without Plaintiff's knowledge or authorization, Defendant regularly used the iPad to intercept, view, copy, reproduce, and make use of Plaintiff's Private Information, which included his personal and work-related communications. Compl. ¶¶3; 18–19.[2] Some of the Private Information intercepted, viewed, and used by Defendant even included communications between Plaintiff and his attorney related to the Parties' ongoing divorce proceeding. Compl. ¶19. Defendant Augstums did not simply review Mr. Harris's information once or at a couple of distinct intervals. Compl. ¶29. She maintained Mr. Harris's Apple login on the electronic device for years, even keeping it with her at all times so that she could monitor its continuous capturing all of Mr. Harris's private communications and other data as it was created and transmitted. Compl. ¶¶22–29. She routinely made copies of this intercepted information and

[2] As alleged in Paragraph 18 of the Complaint, Private Information means: (i) the communications, data, and information that was located on or accessible through Plaintiff's iPad, including Plaintiff's private text messages, notes, photos, location data, internet and browser histories, Plaintiff's confidential work files and information, and other private or confidential communications, information, and data; (ii) communications, data, and information that was synchronized to the device through Plaintiff's iCloud account; and (iii) any and all originals and copies of the foregoing (whether electronic or paper copy) that were made, produced, or reproduced by Defendant, including screenshots, photocopies, photos, compilations, summaries, and other depictions and renditions.

showed off her access to Mr. Harris's sensitive records as a trophy. Compl. ¶28.

Ms. Augstums used this intercepted information about her ex-husband to knowingly harass him. On July 8, 2024, shortly after Plaintiff spent the weekend at a hotel, Defendant sent Plaintiff a text message indicating that she knew he stayed there. Compl. ¶23. Plaintiff was alarmed and suspected, at the time, that Defendant may be having Plaintiff followed. Compl. ¶19. On several occasions after July 8, 2024, Defendant made statements to Plaintiff evidencing knowledge of and private details about his new girlfriend. Compl. ¶24. Plaintiff at that time had not even informed Defendant that he had a new girlfriend. *Id.* Defendant continued making statements thereafter conveying that she knew where Plaintiff and his girlfriend went. Compl. ¶24. Mr. Harris believed that Defendant was persistently and intrusively following him, could be pressuring friends or colleagues to obtain information about his private affairs, and was stalking his girlfriend. Compl. ¶25. As Ms. Augstums continued to disclose to Mr. Harris intimate knowledge of his private affairs, he became increasingly and understandably distressed. *Id.*

In January 2026, Plaintiff learned for the first time that Defendant had wrongfully acquired or retained possession of his iPad and was using it to intercept and monitor all of his communications and other data. Compl. ¶27. Two au pairs, formerly employed by Defendant, informed Mr. Harris about Defendant's extensive use of his iPad to capture records of all his activities. *Id.* In February 2026, one of the au pairs specifically relayed concerning details of Defendant's years' long scheme to spy on Plaintiff, including that:

> (a) Defendant purposely kept the iPad and intentionally did not tell Plaintiff that she did so;
>
> (b) since the iPad was logged into Plaintiff's iCloud account, Defendant was able to access Plaintiff's text/messages, pictures, notes and his location and whereabouts;
>
> (c) Defendant would take the iPad "with her at all times, specifically to check

> [Plaintiff's] location and where he was."
>
> (d) Defendant would "let me read [Plaintiff's] chats too sometimes or she would show me the screenshot and would show me new pictures when [Plaintiff] took some and they showed up in his photos app."
>
> (e) Defendant "took multiple photos of the iPad screen from chats, photos in [Plaintiff's] gallery and locations from his devices. She also read some chats to me what [Plaintiff] and his friends/family wrote [sic]… She started a Folder where she had all the chats and documents and screenshots in it, that could look bad for [Plaintiff] according to her in case she needs it sometime. She told me 'if [Plaintiff] ever tries to take the girls from me I'll show the judge this folder and then they will see that he is not responsible enough.'"

Compl. at ¶28. As revealed by the au pairs, Defendant maintained this electronic device for the express purpose of capturing and reviewing records of all Plaintiff's communications and travels, including real time location tracking. Compl. ¶29.

Some of the information included in the text messages, notes, and other personal data that Defendant intercepted and maintained access to included details of (a) Plaintiff's employment; (b) salary; (c) credit; (d) bank account numbers; (e) credit or debit card numbers; (f) personal identification numbers; (g) electronic identification codes; (h) automated or electronic signatures; (i) biometric data; and (j) passwords, or other numbers or information that could be used to access Plaintiff's financial resources or obtain money; credit, loans, goods, or services. Compl. ¶30. Given Plaintiff's job as a political consultant who advises on sensitive issues, her intercepting and reviewing work-related communications, as well as his calendar records for who he met and where also held considerable value. *See* Compl. ¶18. Further, because Ms. Augstums used Plaintiff's iPad to access Plaintiff's iCloud account records that are stored in Apple's server compounds, she accessed a facility through which an electronic communication service of Plaintiff's was provided and in which electronic communications of Plaintiff's were in electronic storage. Compl. ¶32. Plaintiff's Complaint sets forth the factual allegations necessary to establish how Ms. Augstums

actions correspond with each of his claims in this case.

ii. Procedural History

On July 7, 2026, Plaintiff filed his Complaint in the Circuit Court for Fairfax County, VA (the "Complaint"). *See* ECF No. 1. In the Complaint, Plaintiff asserted six causes of action: (1) a claim for violation of the Virginia Computer Crimes Act, Va. Code §§18.2-1521.1, *et seq*. ("VCCA"); (2) a claim for violation of the Virginia Interception of Wire, Electronic, or Oral Communication Act, Va. Code §§19.2-61, *et seq*.; (3) a claim for Violation of the Stored Communications Act, 18 U.S.C. §§2701, *et seq*.; (4) a claim for violation of the Electronic Communications Privacy Act, 18 U.S.C. §§2510, *et seq*.; (5) a claim for Conversion; and (6) a claim for Invasion of Privacy. *Id.*

On August 26, 2026, Defendant filed a Notice of Removal. *Id.* Thereafter, on September 2, Defendant filed her Motion to Dismiss the Complaint. ECF No. 4. The motion has been set for hearing on November 5, 2026, at 10 a.m.

## III. APPLICABLE LEGAL STANDARD

The "purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). A complaint must "allege sufficient facts to state a claim that is plausible on its face." *Bainbridge Holdings, LLC v. W. Indus.-N., LLC*, No. 2:22CV418, 2022 WL 22286313, at *1 (E.D. Va. Dec. 6, 2022). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The complaint need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## IV. ARGUMENT

i. <u>Ms. Augstums Violated the Virginia Computer Crimes Act.</u>

Mr. Harris alleges all necessary elements to state a claim for Ms. Augstums's violation of the Virginia Computer Crimes Act ("VCCA"). As Defendant acknowledged, there are three separate violations under the statute, all of which she perpetrated through her prolonged spying and harassment of Mr. Harris.

"Any person who uses a computer or computer network, without authority and: … 3. Converts the property of another; is guilty of the crime of computer fraud." Va. Code Ann. § 18.2-152.3. Computer trespass occurs in this context where Ms. Augstums "use[d] a computer or computer network to make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data … communicated by or produced by a computer or computer network." Va. Code Ann. § 18.2-152.4.

> Computer Invasion of Privacy consists of the following four elements: (1) the use of a computer or computer network by the offender; (2) with the intent to examine another's records; (3) in an unauthorized context when the offender knew or should have known that he was without authority to examine the records; and, (4) the records so examined contain employment, financial or personal information of the pleader.

*S.R. v. Inova Healthcare Servs.*, 49 Va. Cir. 119 (1999) (first examination of Va. Code § 18.2-152.5(A) and identifying that personal information included Plaintiff's whereabouts). The Complaint sufficiently alleges each of these grounds for civil liability.

*A. Plaintiff Adequately Alleges Injury Under § 18.2-152.12.*

Defendant overlooks the serious impact Mr. Harris describes that this years' long harassment had on his life when arguing that Plaintiff "fails to plead facts showing that his person or property was injured by reason of any alleged VCCA violation." ECF No. 5 ("Def.'s Mem.") at

6. In arguing that Plaintiff failed to plead a cognizable injury, Defendant misguidedly relies on *Letendre v. Parallon*, No. 1:24-cv-01590, 2025 WL 950405 (E.D. Va. 2025), and *Tryco, Inc. v. U.S. Med. Source, LLC*, 80 Va. Cir. 619 (2010), for the supposed proposition that emotional distress and invasion of privacy do not constitute injuries under the VCCA. However, these persuasive authorities involve narrow commercial and employment contexts where the plaintiffs did not allege emotional distress actually resulted from defendants' computer crimes at issue. *See id.*

In *Letendre*, the plaintiff alleged that a former employer accessed his personal computer. Importantly, however, the plaintiff did not allege that the defendant accessed or used any private or sensitive information belonging to the plaintiff; instead, plaintiff merely made the nebulous assertion that he feared defendant because "they have the access to some of the worlds most advanced technology and users. When this technology is not properly used, it can become a nightmare for a targeted person, in forms of self-identity, theft, financial losses that can really alter a person's life." *Letendre v. Parallon*, No. 1:24-cv-01590, ECF No.10 at ¶214 (Complaint relied upon in *Letendre*, 2025 WL 950405 at 1). That is quite different from this context where another individual not only had access to Mr. Harris's personal information but weaponized it for years to interfere with his life.

In *Tryco*, the plaintiff contended that defendant violated the VCCA when he copied certain alleged confidential and proprietary data from his company computer onto a flash drive and then deleted certain files from the computer. *Tryco*, 80 Va. Cir. 619 at 1. In finding that the plaintiff failed to plead an injury, the trial court highlighted that certain of the files were never actually deleted from the computer. *Id.* at 6. The trial court further found that plaintiff failed to show how the mere copying of the data resulted in an injury because the "only evidence presented was that [the defendant] did not access the document during the time it was in his possession and that as

soon as he discovered it was in his possession he returned it." *Id.*

Here, in contrast, Mr. Harris alleged that he became "increasingly distressed" as Defendant revealed knowledge of his private life that she obtained through unauthorized access to his device. Compl. ¶ 25. He alleges that she evidently took pleasure in torturing him with this information, demonstrating awareness of the damages she caused. Compl. ¶¶ 22–25; 28. He was concerned for years that she was having him and/or his girlfriend routinely followed as he attempted to figure out how she consistently knew private and contemporaneous information. *See* Compl. ¶¶ 22–27. The Complaint further alleges explicitly that Plaintiff suffered damages as a result of Defendant's VCCA violations. Compl. ¶¶ 33, 39. These allegations of emotional distress and invasion of privacy constitute cognizable personal injuries within the meaning of Va. Code 18.2-152.12(A).

Additionally, Plaintiff incurred legal and investigation costs in an effort to determine the source of Defendant's information and put a stop to her harassment. *See* Compl. ¶ 19. The Fourth held that "consequential damages, such as expenses incurred for the investigation and prevention of VCCA violations, are actionable under the statute." *Centre Law & Consulting, LLC v. Axiom Res. Mgmt., Inc.*, 456 F. Supp. 3d 765, 772 (E.D. Va. 2020) (*citing Hately v. Watts*, 917 F.3d 770, 781-82 (4th Cir. 2019); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646–47 (4th Cir. 2009)). Moreover, the full extent of Plaintiff's damages—including but not limited to emotional distress, costs of remediation, and consequential harm—is a factual question that cannot and should not be resolved at the pleading stage. "As long as there are sufficient factual allegations to inform a defendant of the nature of the claim against it, a pleader need not descend into specific factual details in support of that claim." *S.R. v. Inova Healthcare Servs.*, 49 Va. Cir. 119 (1999). For these reasons, Plaintiff alleged a qualifying injury.

*B. Plaintiff Adequately Pleads Computer Invasion of Privacy Under § 18.2-152.5.*

Defendant next argues that the Complaint fails to identify the exact protected information Defendant allegedly examined when violating Va. Code § 18.2-152.5. This argument, however, asks the Court to impose a heightened pleading standard that the Federal Rules do not require. As Defendant undoubtedly knows, it is a hurdle artificially imposed by Defendant's continued, wrongful, possession of his iPad. Under the circumstances, and in accordance with well-settled law, Plaintiff has adequately alleged, based on his information and belief, that Defendant accessed the Private Information on the iPad. Compl. at ¶¶18–22; *see also Lowy v. Daniel Def., LLC*, 167 F.4th 175, 199 (4th Cir. 2026) (noting that allegations "pled on information and belief" are not "insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant[.]") (internal citations omitted).

Section 18.2-152.5 prohibits the use of a computer to "examine" without authorization "any employment, salary, credit or any other financial or identifying information" relating to another person. The Complaint alleges precisely this. Mr. Harris's iPad, through its continuous synchronization with his iCloud account, contained his employment information, salary data, credit and banking information, passwords, and other personally identifying information. Compl. ¶¶ 30–31. Plaintiff further alleges that Defendant used the iPad on a "pervasive and frequent" basis over a period of years. Compl. ¶ 27. Moreover, the nature of his job as a political consultant causes his work communications and meeting details to be of inherent value.

Defendant's reliance on *Glob. Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 631 (E.D. Va. 2009*)*, in this context is misplaced. In *Yessin*, the defendant accessed only the plaintiff's email communications concerning legal strategy in pending litigation. *Id.* at 640. The court found the plaintiff had not alleged that the defendant examined the specific categories of information enumerated in § 18.2-152.5 because legal strategy emails do not constitute "employment, salary,

credit or any other financial or identifying information." *Id.* Here, in contrast, Defendant had unrestricted access to Plaintiff's digital life synced through iCloud—his text messages, photographs, notes, contacts, calendars, financial applications, banking information, salary data, passwords, and identifying information. Compl. ¶¶ 30–31. Unlike the plaintiff in *Yessin*, who could point only to legal strategy communications, Plaintiff here alleges that Defendant had access to—and used, over a period of years—a device that contained precisely the types of information the statute was designed to protect.

The allegation of "pervasive and frequent use" over years, combined with the nature and volume of information available on the device, creates more than the plausible inference needed to defeat a motion to dismiss that Defendant examined his statutorily protected information. Compl. at ¶31. At the pleading stage, Plaintiff is not required to identify the specific document, screen, or data field that Defendant viewed on a particular date. Rather, he need only allege facts that create a plausible inference that Defendant examined the types of information protected by § 18.2-152.5, which he has done.

*C. Plaintiff Adequately Pleads Conversion Under § 18.2-152.3.*

Defendant again attempts to hold Plaintiff to an inaccurate heightened standard when alleging that Plaintiff did not identify the particular computer data she converted or what her specific act of conversion was. Def.'s Mem. at 9. Her reliance on *Yessin* in this context is also distinguishable. In *Yessin*, the defendant merely read the plaintiff's emails without copying, downloading, or reproducing them. *See Yessin*, 686 F. Supp. at 639. The court found this insufficient to establish conversion. *Id.* Here, the Complaint specifically alleges affirmative acts of copying and reproduction—Defendant photographed the iPad's screen and maintained physical or digital copies of Plaintiff's information. Compl. ¶28. These acts go far beyond the passive viewing

of emails at issue in *Yessin*.

Similarly, this Court's opinion in *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927 (E.D. Va. 2010), is inapposite. *Cvent* involved a commercial dispute over the scraping of publicly available event listings and did not address the systematic copying and reproduction of an individual's private electronic communications and personal data. *Id.* at 930. The nature and extent of Defendant's conduct here—photographing, copying, and retaining Plaintiff's most intimate personal information—is precisely the type of unauthorized exercise of dominion that constitutes conversion under the VCCA. Moreover, Ms. Augstums presents no argument to refute her unauthorized copying of Mr. Harris's data. *See Rosenkranz v. Rosenkranz*, 111 Va. Cir. 178A (2023) ("The [VCCA] prohibits a person from using a computer to make an unauthorized copy 'with malicious intent, or through intentionally deceptive means and without authority.'"). For these reasons, Plaintiff adequately alleged a claim under each of the three grounds of the VCCA and Defendant's Motion should be denied with respect to Count I.

ii. Defendant Used an Electronic Device to Contemporaneously Intercept or Attempted to Intercept Mr. Harris's Communications.

Virgina's wiretapping statute mirrors the federal Electronic Communications Privacy Act ("ECPA"). *Compare* 18 U.S.C. § 2511(1)(a), *with* Va. Code § 19.2-62(A). Both confer liability if a defendant "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C.A. § 2511(1)(a); *see also* Va. Code § 19.2-62(A)(1). "'Intercept' means any aural or other means of acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Va. Code § 19.2-61; *see also* 18 U.S.C.A. § 2510(4). "'Monitor" or 'monitoring' means the actual auditory or visual acquisition of an intercepted communication by any means." Va. Code Ann. § 19.2-61. Both statutes "were created to protect

individuals' privacy from unauthorized invasions." *Marsh v. Curran*, 362 F. Supp. 3d 320, 328 (E.D. Va. 2019).

Ms. Augstums futilely attempts to sidestep her blatant and longstanding violations of these statutes through reliance on the temporal context of interception. *See* Defendant's Memo at 10–11. However, the Complaint sets forth in specific detail how Ms. Augstums wrongfully obtained his iPad, knew that the electronic device created an instantaneous record of all his electronic communications—even capturing his real-world location—and clandestinely maintained this device to intercept his communications for years. Compl. ¶¶13–29. Plaintiff even quotes from a direct source in his Complaint that Ms. Augstums kept the iPad with her at all times so she could monitor his communications as they were transmitted. Compl. ¶28.

Defendant's analysis of this contemporaneous issue effectively boils down to one district court case in this jurisdiction, *Yessin*, and its citations from other circuits. However, the proposition Defendant derives from *Yessin* is once again misplaced. In *Yessin*, the defendant merely read the plaintiff's emails after the fact through periodic logins into plaintiff's account using the password information he knew, without copying, downloading, or reproducing any of the communications. *See Yessin*, 686 F. Supp. 2d at 637. Here, the Complaint specifically alleges the affirmative act of maintaining the iPad as an additional electronic monitoring device that surreptitiously copied and reproduced a record of all Plaintiff's exchanges as they were transmitted. *See, e.g.* Compl. ¶19. This years' long systematic monitoring goes far beyond the passive viewing of prior emails at issue in *Yessin*. Moreover, even that case recognized that "interception includes accessing messages in transient storage on a server during the course of transmission." *Yessin*, 686 F. Supp. 2d at 638. The iPad Defendant maintained did precisely that by capturing these exchanges at the time they were transmitted so she could peruse them at her leisure.

Defendant's argument against contemporaneous interception might hold water if Ms. Augstums had utilized the iPad one time to review Mr. Harris's past communications, i.e., looking back through his historical records, but that is not what occurred. Ms. Augstums wrongfully obtained Mr. Harris's iPad, observed that it created a record for her in real-time of all communications he sent, deliberately did not return it to Mr. Harris, and affirmatively maintained a system that perpetuated this immediate capture of all his communications.

> "The other cases cited by [defendant] similarly dismiss ECPA claims in situations where a defendant has logged into, or hacked into, a plaintiff's email account without permission, and therefore these cases are also distinguishable from the facts alleged here, namely the automatic duplication of every email sent and received by the plaintiff as those emails are sent and received."

*Centre Law*, 456 F. Supp. 3d at 770 (collecting cases from other circuits and confirming that computer system creating copy of Plaintiff's transmissions allowed for "near real-time monitoring" of plaintiff's communications and satisfied contemporaneous requirements and distinguished the case from *Yessin*). "In contrast to *Yessin* and the other cases [defendant] cites, the complaint in this case alleges that the ETR … 'automatically intercepted' and duplicated plaintiff's emails at the point of transmission." *Id.* (deeming the use of the electronic device to be "categorically different" than *Yessin* and a periodic login to an email account). Moreover, any potential delay by Defendant in actually reviewing the communications her monitoring system captures is irrelevant. *See Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740 (4th Cir. 1994) (focusing on the contemporaneous record made of the communication rather than when the interceptor reviewed it). Mr. Harris has a valid ECPA claim because, Defendant "simultaneously captured or recorded the communication using an electronic, mechanical or other device." *Lyons v. Liberty Univ., Inc.*, 2026 WL 2167846, at *5 (W.D. Va. July 28, 2026). She does not need to be physically viewing the information in each instance as Mr. Harris transmits or receives

communications for her interception scheme to be in action.

Further, it is not only about Defendant's successful interception of Mr. Harris's communications. The statute criminalizes the attempt to intercept his communications. *DIRECTV Inc. v. Nicholas*, 403 F.3d 223, 225 (4th Cir. 2005) ("Under 18 U.S.C. § 2511(1)(a), it is unlawful to intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."). Mr. Harris alleges that Ms. Augstums maintained an electronic monitoring device that did, or at least intended, to intercept his electronic communication in real-time. She was so fixated on tracking his information that she kept the iPad with her virtually at all times, frequently checking his location as well as incoming and outgoing communications. Compl. ¶¶28, 29. Plaintiff sufficiently alleged that Ms. Augstums intercepted—or at least endeavored to contemporaneously intercept—his communications during the years in which she maintained his iPad as an electronic monitoring device. For these reasons, the Court should deny Defendant's Motion as to Counts II and IV.

iii. Count III States a Claim Under the Stored Communications Act.

Defendant argues that Plaintiff "does not plausibly allege that Ms. Augstums accessed a 'facility through which an electronic communication service is provided' and obtained a communication while it was in 'electronic storage." Def.'s Mem. at 19 (quoting 18 U.S.C. §2701(a)). The contention has no merit. It is even disputed by Defendant elsewhere in her brief when she attempts to sidestep the ECPA by asserting that the "allegations concern information that was already available on or through the iPad and therefore governed by the Stored Communications Act." Def.'s Mem. at 13.

*A. Apple's iCloud Is a "Facility Through Which an Electronic Communication Service Is Provided" Under the SCA.*

The Stored Communications Act "SCA" protects against unauthorized access to a "facility

through which an electronic communication service is provided." 18 U.S.C. § 2701(a). An "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Apple's iCloud is, indisputably, such a service. iCloud enables users to send, receive, store, and synchronize electronic communications—including text messages (via iMessage), photographs, notes, contacts, and other data—across multiple Apple devices through Apple's remote servers.

Apple's iCloud servers are the "facility" through which this electronic communication service is provided. *See Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1177–78 n. 4 (11th Cir. 2017) (holding that Microsoft 365, a cloud-based service, is a "facility" within the meaning of the SCA). When a user registers an Apple device with an Apple ID and enables iCloud synchronization, the device maintains a persistent connection to Apple's servers. *United States v. Hay*, No. 1:19-CR-00170 – RJA-MJR, 2024 WL 1683910, at *1 n.2 (W.D.N.Y. Feb. 23, 2024). Communications sent to and from the user are routed through, stored on, and backed up to those servers. *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 898 (N.D. Cal. 2020). The servers—not the end-user device—are the facility the SCA is designed to protect. *See Hately v. Watts*, 917 F.3d 770, 781–82 (4th Cir. 2019) (recognizing that the SCA addresses unauthorized access to communications held by service providers); *Centre Law*, 456 F. Supp. 3d at 771 (analyzing the SCA's protection of electronic communications in the context of service-provider storage).

Defendant's reliance on *Garcia v. City of Laredo*, 702 F.3d 788 (5th Cir. 2012), and *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), is misplaced. Those cases addressed a fundamentally different question: whether a user's personal device is, standing alone, a "facility" under the SCA. *Garcia* involved the question of whether a personal cell phone was itself a protected facility. 702 F.3d at 792–93. Similarly, *In re iPhone Application Litigation*

considered whether individual iPhones constituted "facilities" for SCA purposes. 844 F. Supp. 2d at 1057–59. Both courts answered no—but neither court addressed the scenario presented here.

Plaintiff does not allege that the iPad itself is the protected "facility." Rather, Plaintiff alleges that the iPad was registered to his Apple ID and actively synchronized with his iCloud account, and that by accessing the iPad, Defendant accessed communications stored on and provided through Apple's iCloud servers—which are indisputably a facility through which an electronic communication service is provided. Compl. ¶¶9, 28–32. The distinction is critical: accessing an iCloud-synced device is not like accessing a stand-alone personal computer with locally stored files. It is accessing a portal to communications maintained by a remote electronic communication service provider. As such, Defendant accessed a facility under the SCA.

*B. Plaintiff's Communications Were in "Electronic Storage" as Defined by the SCA.*

The SCA applies to communications in "electronic storage," which is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17). The Fourth Circuit's decision in *Hately*, is the controlling authority on this issue, and it squarely supports Mr. Harris's claim.

*Hately* presented the question of whether previously delivered and even opened emails maintained by a web-based email provider remained in "electronic storage" under the SCA. 917 F.3d at 785–96. The Fourth Circuit held that they did, specifically under subsection (B) of the electronic-storage definition—*i.e.*, as copies maintained by the electronic communication service "for purposes of backup protection." *Id.* at 785–86. In reaching this conclusion, the Fourth Circuit rejected the narrow "pre-opening" interpretation of electronic storage that some courts had

previously adopted. *Id.* at 786. Under that cramped reading, only messages that had not yet been opened or retrieved by the intended recipient qualified as communications in "electronic storage." The *Hately* court explicitly rejected this approach, holding that "as long as a copy of the communication is kept by the [electronic communication service] for backup protection purposes," it remains in electronic storage under the statute. *Id.* at 786. The court reasoned that a web-based email provider's retention of messages on its servers constitutes a backup protection function, because the provider's copy ensures that the communication is preserved even if the user's local copy is lost, damaged, or deleted. *Id.* at 787–88.

The *Hately* court's reasoning applies with full force here. *See id.* at 794. ("Our conclusion that previously delivered and opened emails stored on a web-based email client are in 'electronic storage'—and therefore actionable under Section 2701(a)—also finds support in the statute's legislative history."). In this case Apple maintains copies of Plaintiff's communications, photographs, notes, and other data on its iCloud servers for the very same backup purpose. When a user enables iCloud on an Apple device, Apple stores the user's communications on its servers precisely so that those communications are preserved and accessible across devices—and protected against loss if any single device is damaged, lost, or stolen. This is the quintessential "backup protection" function that the Fourth Circuit identified. *Hately*, 917 F.3d at 787–88.

Defendant's motion ignores *Hately* and the Fourth Circuit's broad interpretation of electronic storage in its analysis of Count III. This is a glaring omission, particularly where Defendant relied upon the case in attempting to argue against interception under the ECPA. *Hately* is binding precedent in this Circuit, and it directly forecloses Defendant's argument that Plaintiff's communications were not in "electronic storage" merely because they may have already been delivered or opened. Defendant cannot avoid the force of this controlling authority by simply

declining to address it.

*C. The Complaint Plausibly Alleges That Defendant Accessed Communications from iCloud's Electronic Storage, Not Merely from the Physical Device.*

Ms. Augstums incorrectly argues that the Complaint fails to allege that she accessed communications from Apple's servers, as opposed to information "already stored or accessible through the iPad." Def.'s Mem. at 16. This argument misunderstands both the technology at issue and the nature of cloud synchronization.

The Complaint specifically alleges that the iPad was registered to Plaintiff's Apple ID and synchronized with his iCloud account, and that data was "synchronized to the device through Plaintiff's iCloud account." Compl. ¶¶9, 18, 32. Thus, when Defendant opened Plaintiff's iPad and viewed his text messages, photographs, notes, and other data, she was not merely accessing a local hard drive. She was accessing data that was being provided by and stored on Apple's iCloud service—the very "facility" the SCA protects. Compl. ¶¶18–19, 32.

The Complaint further alleges that Defendant "accessed a facility through which an electronic communication service is provided" and "obtained access to electronic communications while in electronic storage." Compl. ¶¶47–48. That is no mere legal conclusion as Defendant attempts to handwave, but a factual allegation supported by Plaintiff's claims of how the iPad could access his information. Accepted as true, as such allegations must be on a motion to dismiss, Plaintiff plausibly states a claim under the SCA.

Defendant searches beyond this circuit for some semblance of supportive authority but still comes up empty. She references *Jones v. Abel*, 2025 WL 2821370 (S.D.N.Y. Oct. 3, 2025), however, that confronts a material difference where the phone at issue was Abel's everyday device. *Id.* at *1. The communications targeted in that case originated through the phone the plaintiff actually used every day, so it was understood that the messages were stored on it without accessing

a facility. *Id.* Here, in contrast, Plaintiff had not used the iPad since at least 2023 and then it was for the limited purpose of managing a wine collection. Compl. ¶7. Photos he took afterward, his real-time location, and communication records could only have reached the iPad through synchronization with his iCloud account. A similar flaw is evident in Defendant's allusion to *Council on American-Islamic Relations v. Gaubatz*, where emails were downloaded to and accessed solely from a user's personal computer. 793 F. Supp. 2d 311, 337 (D.D.C. 2011). There was no ongoing connection to the email service provider's servers in that matter. *Id.* Here it is precisely the opposite when Ms. Augstums captures Mr. Harris's information using the device. Nothing originates from the iPad, it is merely taking in data from the server, either in real-time or subsequently through backup records. Plaintiff specifically alleges that his iPad maintained an active, ongoing synchronization with Apple's iCloud servers. Compl. ¶¶9, 32. Therefore, Plaintiff reasonably alleges that Ms. Augstums retrieved stored content held on Apple's servers rather than merely accessing information stored locally on the iPad. As such, Plaintiff satisfactorily states a claim for Defendant's violation of the SCA and her Motion should be denied as to Count III.

iv. <u>Plaintiff States a Claim for Conversion.</u>

*A. Count V is Not Ambiguous Regarding the Property Allegedly Converted.*

Defendant's assertion that the conversion claim is ambiguous is completely unfounded. Mr. Harris plainly sets forth that Ms. Augstums converted his physical iPad as well as his Private Information, which included his personal financial details and valuable work information when intercepting communications and records using the iPad. Compl. ¶58. The iPad is identified by type (iPad Mini), location (left at 6004 Woodley Road), and registration (Plaintiff's Apple ID). *Id.* ¶¶6–9. The "Private Information" is defined with specificity in Paragraph 18 and includes identified categories of data and, critically, *all originals and copies made by Defendant*—including

screenshots, photocopies, photos, compilations, and summaries. *Id.* ¶18(iii). Further, Plaintiff highlights how Ms. Augstums showed copies of his sensitive information to others, including the au pairs who ultimately revealed this spying system. *Id.* ¶28. There is nothing inherently ambiguous by Plaintiff asserting that Defendant converted more than one item. That Plaintiff alleges conversion of *both* the iPad and the tangible copies of his Private Information is not a defect—it is precisely how he should set forth his claim when Defendant stole more than one item. Further Defendant understood the claim well enough to brief both conversion theories separately, which demonstrates that the Complaint provided fair notice. *See* Def.'s Mem. at 16–19. If the Court finds any ambiguity, Count V should still survive dismissal so long as *either* of Plaintiff's theories state a viable claim.

*B. The Complaint Plausibly Alleges Conversion of the Physical iPad.*

Under Virginia law, conversion is "any wrongful exercise or assumption of authority over another's goods, depriving him of their possession" and "any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights." *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994); *accord Economopoulos v. Kolaitis*, 259 Va. 806, 814 (2000). A plaintiff must show (1) ownership or the right to possession at the time of the alleged conversion and (2) the defendant's wrongful exercise of dominion or control over the property. *See* Restatement (Second) of Torts §§ 222A, 223 (identifying modes of conversion, including taking, using, or refusing to surrender a chattel).

1. <u>Plaintiff's Ownership Is Established by Well-Pleaded Allegations.</u>

The Complaint alleges that the iPad was a gift to Plaintiff and was at all times his "sole and exclusive personal property." Compl. ¶8. It was registered in his name, associated exclusively with his Apple ID and iCloud account, and configured with his credentials, passwords, and

authentication settings. *Id.* ¶9. It was never registered, linked, or assigned to Defendant. *Id.* ¶10. Defendant knew at all times that the iPad was Plaintiff's sole property and that she did not have his permission to use or possess it. *Id.* ¶11.

These well-pleaded allegations must be accepted as true at this stage. Defendant's suggestion that ownership is "disputed" and that the iPad was "abandoned" (Def.'s Mem. at 18) presents the very kind of factual contest that a Rule 12(b)(6) motion cannot resolve in Defendant's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Notably, Plaintiff's allegations negate abandonment: he left the iPad behind "mistakenly and without his knowledge" (Compl. ¶ 6), and he did not know it remained at the residence until January 2026 (*id.* ¶¶12, 26). Abandonment requires an intent to relinquish ownership; there is no such intent alleged or inferable here.

2. <u>No Demand for Return Was Required Because Defendant's Possession Was Never Lawful and She Committed Independent Acts of Dominion.</u>

The centerpiece of Defendant's physical-iPad defense is that Plaintiff "never alleges that he demanded its return." Def.'s Mem. at 17. This argument fails for multiple independent reasons. First, the demand-and-refusal obligation applies only "where a defendant initially obtains possession of property lawfully." *See Shea v. Fridley*, 123 A.2d 1956 (Md. 1956) (noting that a demand for return is only necessary for the "defendant's initial possession is lawful"). Indeed, Defendant's own authority, *American Conservative Union v. Institute for Legislative Analysis, 2025 WL 510236, * 10 (E.D. Va. Feb. 13, 2025)*, involved a former *employee* who was originally *given* a laptop by her employer—i.e., the possession was initially lawful. Here, by contrast, the Complaint alleges that Defendant never had Plaintiff's permission to possess or use the iPad. Compl. ¶¶10–11. She either (a) found the iPad after Plaintiff inadvertently left it behind and, knowing it was his, deliberately concealed it and refused to disclose its existence (*id.* ¶¶12–16); or

(b) *before* Plaintiff moved out, secretly located the iPad, took possession, and concealed it so he would leave without it (*id.* ¶17). Under either scenario, Defendant's possession was wrongful from the outset, and no demand was necessary.

*C. The Private Information Claim Is Also Cognizable.*

Mr. Harris rightfully demands the return of and damages related to Ms. Augstums's conversion of his tangible data. Defendant argues that Mr. Harris's "Private Information" is completely intangible and therefore not subject to conversion under *Mackey v. McDannald*, 298 Va. 645, 659, (2020). Def.'s Mem. at 16–17. However, this argument misconceives both *Mackey* and the Complaint. *Mackey* denied conversion because it involved a purely intangible claim—an alleged interest in a business or business ideas—that was not embodied in any tangible medium. *Mackey*, 298 Va. at 659. In such an ethereal context, Virginia "recognizes conversion of intangible rights only where those rights arise from or are merged into a document evidencing the property right, such as a stock certificate, promissory note, or bond." *Id.* That is a far cry from this case. Here, the allegedly converted property includes significant tangible components. "First, the information at issue is stored on a tangible chattel—the iPad itself—which Defendant physically took and carried "with her at all times." Compl. ¶28(c). The data is part of the chattel that was converted; it is embodied in the device's storage, not floating in the ether. Second—and critically—the Complaint specifically alleges that Defendant created *tangible copies* of Plaintiff's information: she "took multiple photos of the iPad screen," created "screenshots, photocopies, photos, compilations, [and] summaries," and "started a Folder where she had all the chats and documents and screenshots in it." Compl. ¶¶18(iii), 28(d)–(e). Photographs, printed screenshots, and physical compilations are classic tangible chattels. The Complaint's prayer for relief specifically seeks return or destruction of these tangible materials to which Defendant is not

entitled. *Id.* ¶ G(iii).

Defendant's citation to *American Conservative Union* is similarly misplaced. That case involved "confidential, proprietary, trade-secret, and other non-public information"—purely abstract categories with no identified tangible embodiment. 2025 WL 510236, at *10. Here, the Complaint identifies specific tangible items (the iPad, screenshots, photographs, the "Folder" of materials) in Defendant's possession. Moreover, jurisdictions around the country go even further, supporting that purely electronic data stored on the iPad would constitute conversion. *See Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292–93 (2007) (holding that electronic records stored on a computer may be subject to conversion, reasoning that "it would be a curious jurisprudence that turned on the format in which [information] was stored"); *Kremen v. Cohen*, 337 F.3d 1024, 1030–36 (9th Cir. 2003) (recognizing conversion of intangible property—a domain name—under California law). This has also received support in this jurisdiction. "Although email accounts and electronic communications are not tangible property in the traditional sense, many courts have recognized claims for conversion or trespass to chattels involving digital 'property.'" *See, e.g. Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998). At a minimum, this unsettled question under Virginia law should not be resolved on the pleadings. The tangible-embodiment component of Count V certainly survives and the Court should permit discovery before adjudicating the scope of Virginia's conversion doctrine for electronic data stored on a wrongfully possessed device.

*D. The CSA Provides No Basis for Dismissal or a Stay.*

Defendant's final argument is inappropriate for a motion to dismiss. She asks the Court to dismiss or stay Count V based on an arbitration provision in the CSA. This argument fails on multiple grounds.

1. <u>The CSA Is Not Properly Before the Court on This Motion.</u>

The Complaint does not reference, rely on, or even mention the CSA. It references only the Final Order of Divorce for the simple fact that the Parties are divorced. Compl. ¶3. A document may be considered on a Rule 12(b)(6) motion without conversion to summary judgment only if it is "integral to the complaint"—that is, if the complaint "relies heavily upon its terms and effect." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The conversion claim arises from Defendant's tortious conduct—her wrongful taking, concealment, and use of Plaintiff's iPad and Private Information—not from any obligation or right created by the CSA. The CSA is not integral to the Complaint, and the Court should decline to consider it.

2. Even If Considered, the CSA Does Not Cover This Tort Claim.

Even if the Court considers the CSA, the arbitration provision therein does not impact Count V. As Defendant describes it, CSA ¶ 5(b)(v) addresses "disagreement over whether an item constitutes one party's separate or personal property" and "the division of remaining personal property." Def.'s Mem. at 18–19. However, there is no disagreement or ambiguity here regarding the iPad's ownership as set forth in the Complaint. It is exclusively Mr. Harris's property and there are no allegations to suggest otherwise. The Complaint sets forth that he received the iPad as a gift and was the exclusive user of it thereafter. Compl. ¶¶8–11. "Both Ieva and Todd shall keep the items they brought into the marriage, and the items they received during the marriage from inheritance or gift outside the marriage." CSA §5(b)(i). Additionally, "Todd and Ieva shall both keep their own personal items, to include clothing, jewelry, watches, and other similar items." CSA §5(b)(iii). Moreover, if Ms. Augstums believed the iPad was her property, then she should have logged Mr. Harris's iCloud account out of the device rather than maintaining it for years to monitor his activity. Further, that CSA provision governs *property classification and division disputes*

within the collaborative divorce process—not *tort claims* arising from wrongful conduct.

Count V is not a property-division dispute. It is a tort claim alleging that Defendant wrongfully took dominion over Plaintiff's property, concealed her possession of it, used it to spy on him, and created unauthorized copies of his private information. *See* Compl. ¶¶57–59. A party cannot be compelled to arbitrate a dispute it did not agree to submit. The scope of an arbitration clause is determined by contract, and the CSA's personal-property-division provision should not be stretched to encompass a tort claim for conversion, invasion of privacy, and espionage.

Moreover, Defendant's attempted reliance on the CSA is undermined by her own conduct. The Complaint alleges that Defendant deliberately concealed her possession of the iPad—both from Plaintiff and from the collaborative process itself for years. Compl. ¶¶15–17, 28(a). A party should not be permitted to invoke an agreement's dispute-resolution mechanism for an asset that she affirmatively hid during the negotiation of that agreement and for years thereafter.

Additionally, the Private Information component of Count V is plainly outside any personal-property-division clause. The claim for conversion of screenshots, photographs, compiled folders, and other tangible copies of Plaintiff's private data has nothing to do with the division of the former marital estate. These materials were *created* by Defendant through her tortious conduct and were never marital property subject to division. For these reasons, Plaintiff sufficiently alleges valid conversion claims for both the iPad itself and his Private Information that Ms. Augstums seized using the iPad. Defendant presents no justification for staying this claim and her Motion to Dismiss should be denied.

v. <u>Count VI States a Claim for Intrusion upon Seclusion.</u>

Defendant's motion to dismiss Count VI rests entirely on the inaccurate premise that Virginia substantive law governs Plaintiff's invasion-of-privacy claim. Defendant contends that

because Virginia does not recognize the common-law tort of intrusion upon seclusion, Count VI must be dismissed with prejudice. Defendant, however, never conducts a choice-of-law analysis and simply assumes that Virginia law applies. However, that assumption is unwarranted.

In a removed action, the federal court applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Virginia follows the *lex loci delicti* rule for tort claims. *McMillan v. McMillan*, 219 Va. 1127, 1131 (1979). Under this doctrine, the applicable law for a tort claim is the '"place of wrong,"' *i.e.*, the "place where the wrongful act occurred, even when that place differs from the place where the effects of injury are felt." *Milton v. IIT Rsch. Inst.*, 138 F.3d 519, 522 (4th Cir. 1998) (rejecting contention that the applicable law for tort claim was the state of plaintiff's residence merely because some of the injury, including "lost income and emotional distress," was felt in that state).

The tort of intrusion upon seclusion has three elements: (1) "an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination," (2) "into a place where the plaintiff has secluded himself, or into his private or secret concerns"; and (3) "that would be highly offensive to an ordinary, reasonable person." *Tika v. Jack*, No. 3:21-CV-00030, 2022 WL 2955153, at *7 (W.D. Va. July 26, 2022) (applying D.C. law) (internal citations omitted). For purposes of the *lex loci* analysis, therefore, the "place of wrong" for an intrusion upon seclusion claim is the state where the wrongful interference or intrusion occurs which, in the instant case, would be the state(s) where Defendant wrongfully accessed Plaintiff's sensitive information from the iPad.

Here, the Complaint alleges that Defendant used Plaintiff's iPad—which was synchronized with Plaintiff's iCloud account—to access, view, and copy Plaintiff's private communications, data, and location information. The "Private Information" included data "synchronized to the

device through Plaintiff's iCloud account," which involves Apple's cloud servers and the transmission and storage of data across potentially multiple jurisdictions.

The Complaint further alleges that Defendant accessed Plaintiff's Private Information over an extended period from at least July 2024 through January 2026 and beyond. During this period, Plaintiff lived separately from Defendant, and the intrusions into his privacy—including the monitoring of his whereabouts, romantic relationship, and private affairs—more likely than not occurred in jurisdictions other than Virginia. Plaintiff alleges that Defendant kept the iPad with her at all times so she could intrude upon his privacy even when she travelled away from the Residence. Without discovery into the technical details of how and where each act of intrusion occurred, the Court cannot definitively determine the *locus delicti* at the pleading stage. *See Andersson Gustafsson Advokatbyra KB v. eSCRUB Sys.*, No. 1:10-cv-632, 2011 WL 677053, at *2 (E.D. Va. Feb. 15, 2011) ("The Court finds that the choice of law for tort and contract based claims should be determined with the benefit of a more complete record pending discovery"); *Malinowski v. Lichter Grp., LLC*, No. WDQ-14-917, 2015 WL 1129522, at *4 (D. Md. Mar. 11, 2015) (declining to resolve choice-of-law issue at motion-to-dismiss stage because its "fact-intensive" and "context specific" inquiry made it appropriate to defer "until after the parties have engaged in discovery"); *Rosen v. Brookhaven Capital Mgmt. Co.*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002) (noting that choice-of-law determinations are "usually reserved for trial or summary judgment" rather than decided on a motion to dismiss).

vi. Plaintiff May Pursue Alternative Legal Theories.

Mr. Harris is entitled to plead in the alternative such that any supposed contradictions in his claims are irrelevant. A plaintiff may include multiple claims or theories of liability in a complaint, "regardless of consistency." Fed. R. Civ. P. 8(a)(3), (d)(3). Therefore, Plaintiff is

entitled to assert at this stage—and through trial—that Ms. Augstums both intercepted his communications in violation of the ECPA and violated the Stored Communications Act by accessing his communications after transmission concluded. Moreover, *Hately* established that such claims are not even inherently inconsistent as some fact patterns, such as ours, can satisfy both statutes' criteria. *See Hately*, 917 F.3d at 789 ("entities can simultaneously function as both an electronic communication service and a remote computing service"). This negates Defendant's conflicting arguments where she first alleges no ECPA violation because the communications were stored but then no SCA violation because the communications were on the device. Ms. Augstums attempts to draw the narrowest interpretations of the facts in hopes of skirting consequences for her longstanding and willful misconduct. However, that is inappropriate where inferences are interpreted in Plaintiff's favor. *Edwards*, 178 F.3d at 244. Moreover, our legal system does not reward Defendant for ambiguity when she possesses the discovery that can answer these questions. "Courts have cautioned to not 'allow [defendants] to benefit from the paucity of evidence attributable to [their] own [conduct],' especially when the conduct leads to a lack of evidence that 'would most easily be produced *in defense* by [the defendant].'" *Li v. Bristol*, No. 4:24CV59, 2025 WL 3769270, at *12 (E.D. Va. Dec. 5, 2025) (*quoting DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 327 (4th Cir. 2008)). Here, Ms. Augstums continues to wrongfully possess the iPad that will reveal how she intercepted Mr. Harris's electronic communications and/or reviewed his stored communications. Thus, Mr. Harris is entitled to maintain his claims, even if certain elements conflict, until discovery is obtained to cast more light on Ms. Augstums's illicit monitoring.

vii. <u>If the Court Finds Any Deficiencies, Leave to Amend Should be Freely Granted.</u>

Under Rule 15(a)(2), courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). That mandate reflects a core principle of federal procedure: resolving

cases on their merits, not on pleading technicalities. The Supreme Court has made clear that absent undue delay, bad faith, or repeated failure to cure defects, leave "should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, none of those exceptions apply. Plaintiff has not previously amended his Complaint and the serious, longstanding nature of Defendant's spying supports resolving this lawsuit on the merits. There has been no bad faith, no delay, and certainly no pattern of failed pleading by Plaintiff. If the Court finds any technical insufficiency, whether in the framing of a claim or the articulation of damages, Mr. Harris respectfully requests leave to amend. That is not just proper under Rule 15, it is required by the very principle that federal courts do not dismiss potentially meritorious claims unless amendment is futile. This case deserves to be decided on a full record.

## V. CONCLUSION

WHEREFORE, for the foregoing reasons, each count raised in the Complaint against Defendant Ieva Augstums states a claim upon which relief may be granted. As such, Plaintiff David Todd Harris respectfully requests that Defendant Augstum's Motion to Dismiss be denied in its entirety. To the extent the Court considers dismissal to be warranted on any count raised in the Complaint, Plaintiff, in the alternative, requests Leave to Amend his Complaint to restate such claims with greater particularity.

Dated: September 30, 2026

Respectfully submitted,

**OFFIT KURMAN, P.A.**

*/s/ David N. Goldberg*
David N. Goldberg (VSB No. 33468)
Alexander Rogosa (*PHV application filed*)
dgoldberg@offitkurman.com

*/s/ John D. Perry*
John D. Perry (VSB No. 95412)
john.perry@offitkurman.com
7501 Wisconsin Ave., Suite 1000W

alex.rogosa@offitkurman.com
4000 Towers Crescent Drive, Suite 1400
Tysons Corner, VA 22182
Telephone: (703) 745-1800
Facsimile: (703) 745-1835

Bethesda, MD 20814
Telephone: (240) 507-1772

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and accurate copy of the foregoing *Opposition to Defendant's Motion to Dismiss* was served electronically via the Court's electronic filing system on this 30th day of September, 2026 on the following counsel of record:

Andrew J. Smith
Cala Dossey
Berenzweig Leonard, LLP
8300 Greensboro Dr., Suite 1250
McLean, VA 22102
*Counsel for Ms. Augstums*

*/s/ John D. Perry*
John D. Perry