**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **DAVID TODD HARRIS**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**IEVA AUGSTUMS**<br><br>**Defendant.** | **Civil Action No.: 1:26-cv-02787** |

**REPLY IN SUPPORT OF DEFENDANT IEVA AUGSTUMS**
**MOTION TO DISMISS PLAINTIFF DAVID TODD HARRIS' COMPLAINT**

Andrew J. Smith, Esq., (VSB No. 81538)
Cala Dossey, Esq.. (VSB No. 100140)
Berenzweig Leonard, LLP
8300 Greensboro Drive; Suite 1250
McLean, Virginia 22102
Telephone: 703-760-0402
Facsimile: 703-462-8674
dsmith@berenzweiglaw.com
cdossey@berenzweiglaw.com
*Counsel for Defendant*

# TABLE OF CONTENTS


I. Introduction. ..... 1

II. Reply Arguments. ..... 2

- A. Plaintiff's Opposition Does Not Cure the Deficiencies in His VCCA Claim. ..... 2
- B. Plaintiff Fails to Demonstrate a "Contemporaneous" Interception. ..... 5
- C. Plaintiff's Opposition Still Does Not State a Stored Communications Act Claim. ..... 8
- D. Plaintiff's Opposition Does Not Save His Conversion Claim. ..... 12
- E. Count VI Is Governed by Virginia Law. ..... 16
- F. Alternative Pleading Does Not Cure Deficient Claims. ..... 19
- G. Plaintiff Is Not Automatically Entitled to Amend. ..... 19

III. Conclusion ..... 19

## TABLE OF AUTHORITIES

**Cases**

*A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646–47 (4th Cir. 2009)........................ 3
*America Online, Inc. v. IMS*, 24 F. Supp. 2d 548 (E.D. Va. 1998)............................................. 14
*American Conservative Union v. Institute for Legislative Analysis*, No. 1:24-cv-500, 2025 WL 510236 (E.D. Va. Feb. 13, 2025) ....................................................................................... 13
*Andersson Gustafsson* ........................................................................................................... 17
*Barbour v. Garland*, 105 F.4th 579, 593 (4th Cir. 2024) ........................................................... 18
*Bruce v. McDonald*, No. 3:13CV221-MHT, 2014 WL 931522, at *5 (M.D. Ala. Mar. 10, 2014). 7
*Centre Law & Consulting, LLC v. Axiom Resource Management, Inc.*, 456 F. Supp. 3d 765, 772 (E.D. Va. 2020) ........................................................................................................ 3, 6, 10
*Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311 (D.D.C. 2011)..........................................................................................................11
*Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 934–35 (E.D. Va. 2010)............................... 5
*DIRECTV Inc. v. Nicholas*, 403 F.3d 223, 226 (4th Cir. 2005)...................................................... 6
*Economopoulos v. Kolaitis*, 259 Va. 806, 814 (2000).................................................................. 14
*Foman* ................................................................................................................................. 19
*Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 640 (E.D. Va. 2009) ........... 4, 6, 7, 8
*Hately v. Watts*, 917 F.3d 770 (4th Cir. 2019) ................................................................... 10, 19
*Hovanec v. Miller*, No. SA-17-CV-766-XR, 2018 WL 1221486, at *4 (W.D. Tex. Mar. 7, 2018) 6, 8
*Jones v. Abel*, 2025 WL 2821370 (S.D.N.Y. Oct. 3, 2025)..........................................................11
*Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)........................................................ 18
*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) ........................................................................ 13
*Li* 19
*Lowy v. Daniel Defense, LLC*, 167 F.4th 175 (4th Cir. 2026)................................................... 4, 5
*Mackey v. McDannald*, 298 Va. 645 (2020)............................................................................ 12, 13
*Malinowski* ........................................................................................................................... 17
*Mazzorana v. Kelly*, No. 21 C 1899, 2922 WL 1211482 ........................................................ 6, 8
*Milton v. IIT Research Institute*, 138 F.3d 519, 522 (4th Cir. 1998) ..................................... 17, 18
*Rosen v. Brookhaven Capital Management Co.*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002) .. 1, 18
*Rosenkranz v. Rosenkranz*, 111 Va. Cir. 178A (2023)............................................................. 1, 5
*S.R. v. Inova Healthcare Services*, 49 Va. Cir. 119 (1999)...................................................... 1, 3
*Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740 (4th Cir .1994) ............................................... 8
*Shea v. Fridley*, 123 A.2d 358 (D.C. Mun. Ct. App. 1956)......................................................... 15
*Thyroff v. Nationwide Mutual Insurance Co.*, 8 N.Y.3d 283 (2007)............................................ 13
*United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305–06 (1994) ......................... 13, 14, 15
*Williams v. Apple, Inc.*............................................................................................................. 9

**Statutes**

§ 18.2-152.12 .......... 2
§ 18.2-152.3 .......... 1, 4, 5
§ 18.2-152.4 .......... 1, 4, 5
§ 18.2-152.5 .......... 2, 3, 4, 5
§ 2511(1)(a).......... 6
§§ 19.2-62(B)(1) .......... 7
Va. Code § 19.2-61.......... 7
Virginia Wiretap Act .......... 7

## I. INTRODUCTION.

Plaintiff's Opposition goes beyond disagreeing with Defendant's legal arguments. It repeatedly attributes allegations to the Complaint that are not there, adds facts for the first time in briefing, and cites cases for propositions those cases do not support. In several instances, the Opposition relies on a version of the pleading, or a version of the cited authority, that simply does not exist.

The problems appear throughout the brief. For example, Plaintiff says Paragraph 19 of the Complaint alleges "legal and investigation costs," but it does not. He relies on *S.R. v. Inova* without accounting for the fact that it construed materially different VCCA language, and cites *Rosenkranz* under § 18.2-152.4 to support a claim brought under § 18.2-152.3. On the SCA claim, Plaintiff says *Centre Law* analyzed the Stored Communications Act even though no SCA claim was before that court; attributes a "persistent connection" proposition to *United States v. Hay* that the case never states; and attempts to distinguish *Gaubatz* based on a factual scenario that was not the factual scenario in that case.

The same pattern continues elsewhere. Plaintiff describes *Mackey* as a case involving "business ideas" when it involved stock. He cites "*Shea v. Fridley*, 123 A.2d 1956 (Md. 1956)," even though there is no such Maryland decision corresponding to that citation. And he attributes to *Rosen v. Brookhaven Capital Management* a choice-of-law proposition, including quoted language, that does not appear in the case. Meanwhile, the Opposition adds facts that never appeared in the Complaint at all, including "printed" screenshots, a physical compilation, "active, ongoing synchronization" with iCloud, travel outside Virginia, investigation costs, and other allegations aimed directly at the defects raised in Ms. Augstums's Motion.

The Court must decide the Motion based on the Complaint Plaintiff actually filed and the correct characterization of authorities cited. Once those added allegations and inaccurate descriptions are set aside, the same defects remain. Counts I through VI should be dismissed, and the claims that fail as a matter of law should be dismissed with prejudice.

## II. Reply Arguments.

### *A. Plaintiff's Opposition Does Not Cure the Deficiencies in His VCCA Claim.*

Plaintiff's Opposition does not cure the defects in Count I. Instead, it wrongfully attempts to plead new facts through briefing, relies on an outdated version of § 18.2-152.5, and cites authority addressing one VCCA offense as though it established the elements of another. None of that supplies the allegations missing from the Complaint and Count I remain deficient.

Plaintiff still has not pleaded an injury caused by a VCCA violation. Ms. Augstums did not argue, as the Opposition suggests, that emotional distress can never qualify as an injury under § 18.2-152.12. The point is narrower. The Complaint does not plausibly connect Plaintiff's alleged distress to any particular VCCA violation. Plaintiff alleges that his distress began when he believed Ms. Augstums was following him, monitoring his girlfriend's social-media activity, or obtaining information from friends and acquaintances. Compl. ¶ 25. Yet he also alleges that, during that same period, he did not know or even suspect that Ms. Augstums possessed the iPad. Compl. ¶¶ 26–27. By his own allegations, the "distress" preceded any knowledge of the computer conduct on which Count I is based.

The Opposition tries to get around that problem by asserting, for the first time, that Plaintiff incurred "legal and investigation costs" trying to determine the source of Ms. Augstums's information. Opp. at 9. It then cites Paragraph 19 of the Complaint as though those costs were pleaded there. They were not. Paragraph 19 says nothing about investigation expenses, remediation

costs, or legal fees incurred in determining how Ms. Augstums obtained information. It alleges only that Ms. Augstums accessed certain information, including notes concerning Plaintiff's communications with counsel. The allegation the Opposition attributes to Paragraph 19 simply is not there. Plaintiff cannot add a new category of damages in his Opposition and then cite an unrelated paragraph to make it appear that those damages were pleaded from the beginning.

Plaintiff's reliance on *Centre Law* and *A.V.* also does not fix the problem. *See* Opp. at 9. Those decisions involved investigation or remediation expenses that were actually alleged or supported by the record. *See Centre Law & Consulting, LLC v. Axiom Resource Management, Inc.*, 456 F. Supp. 3d 765, 772 (E.D. Va. 2020); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646–47 (4th Cir. 2009). There is no comparable allegation in this Complaint.

Plaintiff's § 18.2-152.5 argument also rests in substantial part on statutory language that no longer governs. Plaintiff cites *S.R. v. Inova Healthcare Services*, 49 Va. Cir. 119, 1999 WL 797192 (1999), for the proposition that information concerning an individual's whereabouts or private affairs can constitute protected "personal information." Opp. at 9. But *S.R.* construed an earlier version of § 18.2-152.5 that referred broadly to "financial or personal information." 1999 WL 797192, at *7–8. The statute now protects employment, salary, credit, financial, and specifically defined identifying information. *See Centre Law*, 456 F. Supp. 3d at 771. Plaintiff relies on *S.R.* as though its discussion of "personal information" interprets the statute now before the Court. It does not. The statutory language changed, and Plaintiff cannot use language the General Assembly removed to expand the current statute beyond the categories it chose to protect.[1]

[1] Plaintiff additionally cites to *S.R.* for the proposition that location data is protected under § 18.2-152.5, however in *S.R.* the information at issue was plaintiff's admission to a psychiatric facility—*not* her general "location." 1999 WL 797192, at *5.

Applying the statute as it exists today, the Complaint still fails. Plaintiff alleges that protected information existed somewhere on, or was accessible through, the iPad or iCloud account. But the allegations describing what Ms. Augstums supposedly viewed identify texts, photographs, notes, chats, and location information. Compl. ¶¶ 28–31. Those allegations do not identify salary records, account numbers, credit-card information, passwords, or another protected category that Ms. Augstums actually examined. *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 640 (E.D. Va. 2009), makes the problem clear. It is not enough that protected information may have existed somewhere on a device or account. The pleaded facts must support a plausible inference that the records actually examined contained information covered by § 18.2-152.5. 686 F. Supp. 2d at 640.

Plaintiff's reliance on *Lowy v. Daniel Defense, LLC*, 167 F.4th 175 (4th Cir. 2026), overstates the decision. *Lowy* does not hold that a plaintiff may get past a missing element simply by adding the words "information and belief." Those allegations remain subject to Rule 8 and still require facts making the asserted inference plausible. 167 F.4th at 199. Here, Plaintiff's theory boils down to this: Ms. Augstums allegedly used the iPad frequently, some protected information existed somewhere on or through the device, and therefore Ms. Augstums must have examined some of it. That is possible, but possibility is not plausibility. Frequent access says nothing about what information was actually examined. The same problem exists with Plaintiff's § 18.2-152.3 theory. The Opposition repeatedly points to allegations that Ms. Augstums photographed the iPad screen, made screenshots, or retained copies of information and then treats those acts as conversion. E.g. Opp. at 11-12. But the VCCA addresses unauthorized copying separately in § 18.2-152.4. Section 18.2-152.3 is different and requires as actual act of false pretenses, larceny, embezzlement, or conversion. *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 934–35 (E.D.

Va. 2010), makes that distinction clear. The court recognized that § 18.2-152.3, as amended, requires an actual predicate act and rejected allegations that did not plausibly establish one. 739 F. Supp. 2d at 934 ("the statute as amended in 2005 now requires that the defendant must *actually commit* larceny, false pretenses, embezzlement, or conversion to be liable."). Plaintiff tries to distinguish *Cvent* because the information copied there was publicly available. Opp. at 12. That misses the point, as *Cvent* demonstrates that copying data, by itself, does not establish the separate conversion requirement imposed by § 18.2-152.3.

Plaintiff's reliance on *Rosenkranz v. Rosenkranz*, 111 Va. Cir. 178A (2023), is not just misplaced, it cites the wrong statutory provision for the point being argued. The language Plaintiff quotes comes from § 18.2-152.4, which addresses unauthorized copying, yet Plaintiff uses it to support a claim under § 18.2-152.3, which requires conversion. Those are different offenses with different elements. Even if the alleged photographing or copying could support a claim under § 18.2-152.4, it does not establish conversion under § 18.2-152.3. Plaintiff cannot collapse the two provisions into one. Treating it that way would erase the distinction the General Assembly drew between the two offenses.

In the end, the Opposition does not cure Count I. It tries to work around the pleading by adding damages that were never alleged, citing a paragraph that says nothing about those damages, relying on outdated statutory language, stretching *Lowy* beyond its holding, and invoking *Rosenkranz* under the wrong VCCA provision. None of that changes the Complaint Plaintiff filed. Count I still fails to plausibly allege an injury caused by a VCCA violation, the examination of information protected by § 18.2-152.5, or the conversion required by § 18.2-152.3. It should be dismissed.

### *B. Plaintiff Fails to Demonstrate a "Contemporaneous" Interception.*

Plaintiff appears to either grossly misunderstand the overwhelming consensus regarding the definition of "intercept" under the Wiretap Act, or bravely crusades for it its dramatic expansion in spite of well-settled precedent. Breezing past Ms. Augstums's "citations from other circuits," Plaintiff asks this Court to hold merely "observ[ing] that [an iPad] created a record . . . in real-time of all communications [Plaintiff] sent" rises to the same level as using covert software to divert emails to a third-party device. *See* Opp. at p. 14, *citing Centre Law and Consulting, LLC v. Axiom Resource Management, Inc.*, 465 F.Supp.3d 765, 770 (E.D. Va. 2020); *compare DIRECTV Inc. v. Nicholas*, 403 F.3d 223, 226 (4th Cir. 2005) ("using a pirate access device to intercept the encrypted satellite transmissions of a satellite television provider constitutes a violation of § 2511(1)(a)") *with Mazzorana v. Kelly*, No. 21 C 1899, 2922 WL 1211482, at *2 (N.D. Ill. Apr. 25, 2022) (dismissing Wiretap claim where plaintiff alleged her boyfriend's ex-wife viewed plaintiff's communications on iPad belonging to former couple's children that was signed into boyfriend's iCloud account) *and Hovanec v. Miller*, No. SA-17-CV-766-XR, 2018 WL 1221486, at *4 (W.D. Tex. Mar. 7, 2018) (accessing iCloud account did not constitute "intercept" of communications).

By placing the alleged "monitoring" of an iPad on par with affirmatively tampering with a communications system to divert messages to a third party device, Plaintiff reads the well-accepted "contemporaneous acquisition" requirement out of the Wiretap Act. *See Yessin*, 686 F.Supp.2d at 638 ("Plaintiff's suggestion" that accessing a communication after it has reached its destination server "would render redundant the 'intercept' prohibitions of the ECPA and the 'accessing stored communications' prohibitions of the SCA—an impermissible result given that the two laws were enacted as part of the same bill."). Just as a football in mid-pass can only be "intercepted" before it is caught, a communication can only be "intercepted" "at some point between the time the communication is sent and the time it is received by the destination server." *Id.*

Even if Ms. Augstums had used Plaintiff's credentials to log into his account on her own device, by no stretch of the imagination would she be intercepting any communication *before* it reached its destination server. *See id.*; *see also Bruce v. McDonald*, No. 3:13CV221-MHT, 2014 WL 931522, at *5 (M.D. Ala. Mar. 10, 2014) ("in a consistent string of cases courts have held time and again that unauthorized access to an email account, standing alone, does not constitute interception") (collecting cases). In this way, an iPad is no different from any other computer used to access a plaintiff's email inbox—and Plaintiff alleges as much by his insistence that access to the iPad practically constituted access to his iCloud account. Opp. at 15-17; *see also Bruce*, 2014 WL 931522, at *6 ("Thus the cases [...] which have found no interception in the case of email *access* are entirely consistent with the cases [...] finding interception in the case of *automatic duplication*.").

Seeming to recognize the weakness in his argument, Plaintiff additionally implies that "systematic monitoring" constitutes a Wiretap. Opp. at p.13. Plaintiff cites to the definition of "monitor" under Va. Code § 19.2-61, *id.* at 12, but notably does not explain how "monitoring" fits into the statutory scheme as relevant here. That is because it does not. As included in the Virginia Wiretap Act, the term "monitor" appears in §§ 19.2-62(B)(1) ("a provider of wire communication service to the public shall not utilize service observing or random monitoring except for . . . ."); 19.2-62(B)(3)(d) (" . . . intercept any radio communication made through a system that utilizes frequencies monitored by . . . ."); 19.2-66 (entitled "When Attorney General or Chief Deputy Attorney General may apply for order authorizing interception of communications"); 19.2-68(A)(7), (B)(5), (C)(5) (on interception by law enforcement). Thus, "monitoring" does not give rise to a civil cause of action.

Plaintiff's citation to *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740 (4th Cir .1994) is similarly misguided. Rather than "focusing on the contemporaneous record made of the communication rather than when the interceptor viewed it," Opp. at 14, *Sanders* held that a "voice logger" that recorded oral conversations did not qualify for the business exception to §2510(5)(a)(i), but that any interception was inadvertent, and therefore not actionable. 38 F.3d at 739-43. In fact, the court expressly rejected the argument that "the Act [...] does not require proof of listening or of preservation for listening purposes." *Id.* at 742.

The Court does not need to reinvent to wheel to determine whether use of an iCloud-enabled iPad allows a defendant to catch an electronic communication "in flight." Plaintiff has simply reframed the theory of unauthorized access rejected in *Yessin*. *See* 686 F.Supp.2d at 638; *see also Mazzorana*, 2022 WL 1211482, at *2; *Hovanec*, 2018 WL 1221486, at *4. By the time Ms. Augstums could arguably have viewed any communications delivered to the iPad, the football had already been caught, and no interception could occur. *See Yessin,* 686 F.Supp.2d at 638. Accordingly, Counts II and IV should be dismissed.

### ***C. Plaintiff's Opposition Still Does Not State a Stored Communications Act Claim.***

Plaintiff's SCA claim still fails for the same basic reason: the Complaint never plausibly alleges that Ms. Augstums accessed any communication from Apple's iCloud servers. It alleges that the iPad was linked to Plaintiff's iCloud account and that information synchronized to the device. That is not the same thing as alleging that Ms. Augstums accessed communications while they were stored on Apple's servers. The Opposition tries to bridge that gap with technical assertions that do not appear in the Complaint and with cases that do not say what Plaintiff claims they say.

The Complaint alleges that the iPad was associated with Plaintiff's Apple ID and iCloud account and that certain information was "synchronized to the device through Plaintiff's iCloud account." Compl. ¶¶ 9, 18. Paragraph 32 then alleges, on information and belief, that because the iPad was synchronized with iCloud, Ms. Augstums accessed a facility through which an electronic communication service was provided. What is missing is any factual allegation that she actually retrieved a particular communication from Apple's servers rather than viewing information that had already synchronized to the iPad. The Opposition now says the device maintained a "persistent connection" to Apple's servers, that the Complaint "specifically alleges" an "active, ongoing synchronization," and that "[n]othing originates from the iPad." Opp. at 16, 19–20. Those allegation do not appear in the Complaint.

The authorities Plaintiff relies upon do not fill that hole. Plaintiff cites *United States v. Hay* 1:19-CR-00170-RJA-MJR, 2024 WL 1683910, at *1, n.2 (W.D. NY 2024) for the proposition that an iCloud-enabled device "maintains a persistent connection to Apple's servers." *Hay* says no such thing. The cited footnote explains generally that iCloud permits users to store content and synchronize data across devices and that an Apple ID can serve as an authentication and syncing mechanism. Plaintiff has taken that general description (drawn from a Wikipedia entry cited in the opinion) and converted it into a conclusion the court never made.

The same is true of *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 898 (N.D. Cal. 2020). Plaintiff says *Williams* establishes that communications are "routed through, stored on, and backed up to" Apple's servers. Opp. at 16. But *Williams* was a contract case, and the cited portion simply quotes Apple's terms stating that certain user content may be automatically sent to and stored by Apple. 449 F.Supp. 3d at 898. It does not hold that every communication is routed through iCloud, much less that viewing material on an iPad necessarily means accessing the server-side copy.

Plaintiff's citation to *Centre Law & Consulting, LLC v. Axiom Resource Management, Inc.*, 456 F. Supp. 3d 765 (E.D. Va. 2020), is worse. The Opposition tells the Court that *Centre Law* analyzed "the SCA's protection of electronic communications in the context of service-provider storage." Opp. at 16. It did not. There was no Stored Communications Act claim before the court at all. Plaintiff is attributing an SCA analysis to a decision that never undertook one.

*Hately v. Watts*, 917 F.3d 770 (4th Cir. 2019), does not solve the problem either. *Hately* held that delivered and opened emails can remain in "electronic storage" when a provider continues to maintain them for backup protection. 917 F.3d at 785. That proposition is not disputed. The defendant in *Hately* actually used login credentials to enter and browse the plaintiff's provider-hosted email account. *Id.* at 774. The question before the court was whether those provider-stored emails remained protected after they had been opened. *Id.* at 785. Here, the threshold issue is different: the Complaint does not plausibly allege that Ms. Augstums accessed the provider-stored copy in the first place.

If anything, *Hately* underscores the distinction. The Fourth Circuit focused on whether the communication at issue was maintained in the web-based service's storage rather than somewhere else. *Id*. Plaintiff repeatedly answers a different argument, as though Defendant contends an opened message can never qualify as electronic storage. *See* Opp. at 17–19. That is not Defendant's position. The problem is that Plaintiff never alleges facts showing that Ms. Augstums accessed the copy maintained by iCloud instead of a copy already resident on the iPad.

Plaintiff also goes too far when he declares that iCloud is "indisputably" an electronic communication service for texts, photographs, notes, contacts, and essentially every other category of data identified in the Complaint. Opp. at 16. *Hately* expressly recognized that the inquiry is functional and depends on the service at issue. 917 F.3d at 790. A provider may function as an

electronic communication service when supplying email without necessarily occupying that same role for every unrelated cloud-based product it offers. *Id*. Plaintiff simply lumps those different services together and assumes the same statutory analysis applies to all of them.

The attempt to distinguish *Jones v. Abel*, 2025 WL 2821370 (S.D.N.Y. Oct. 3, 2025), misses the point of that decision. Plaintiff says *Jones* is different because Abel's phone was her everyday device. Opp. at 19. That was not why the claim failed. The court assumed that accessing communications through iCloud could fall within the SCA, but still dismissed because the plaintiff had not plausibly alleged that the messages were actually obtained from cloud storage rather than the phone itself. *Abel*, 2025 WL 2821370, at *7. *Abel* even alleged that defendants retained access to her iCloud account and that communications were "drawn largely from Abel's iCloud." *Id.* at *3. The court still found those allegations insufficient because the pleading did not identify which communications came from cloud storage or how they were accessed there instead of from the device. *Id.* at *7. The same problem is present here.

The Opposition also mischaracterizes *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311 (D.D.C. 2011). Plaintiff describes *Gaubatz* as a case involving messages downloaded to and accessed solely from a personal computer without any server connection. Opp. at 20. That was not what happened. The court denied dismissal because the plaintiffs specifically alleged that local computers were used to access their computer servers, networks, and systems. *Gaubatz*, 793 F.Supp.2d at 337. The court distinguished server access from simply viewing information stored on a local hard drive and later reiterated that the claim survived because the communications were allegedly accessed while stored on those servers. *Id*. Plaintiff has taken a rule discussed in *Gaubatz* and presented it as though it described the facts of the case.

Paragraphs 47 and 48 do not cure anything. They simply recite the statutory elements: Ms. Augstums supposedly "accessed without authorization a facility through which an electronic communication service is provided" and obtained communications "while they were in electronic storage." Compl. ¶¶ 47–48. Those statements do not identify the facility actually accessed, the communication supposedly obtained from it, or how the communication was obtained while stored there. They are legal conclusions, not the missing facts.

Ultimately, Plaintiff's theory depends on equating synchronization with server access. Because information synchronized from iCloud to the iPad, Plaintiff assumes that anything later viewed on the device must have been accessed from Apple's servers. That does not follow. Synchronization may explain how information arrived on the iPad. It does not establish where the information resided when Ms. Augstums allegedly viewed it. The Complaint still fails to identify any communication she actually obtained from iCloud's electronic storage rather than from the iPad itself. Count III should be dismissed.

### *D. Plaintiff's Opposition Does Not Save His Conversion Claim.*

Plaintiff has now clarified that Count V is intended to cover both the physical iPad and his broadly defined "Private Information." That clarification helps identify the theory, but it does not fix the problems with either part of the claim.

Plaintiff's argument concerning the "Private Information" starts with a misdescription of *Mackey v. McDannald*, 298 Va. 645 (2020). The Opposition says *Mackey* involved "an alleged interest in a business or business ideas" that had not been reduced to tangible form. Opp. at 23. It did not. *Mackey* involved stock. In addressing conversion, the Supreme Court of Virginia reaffirmed that conversion generally applies to tangible property and extends to intangible rights only where those rights "arise from or are merged with a document, such as a valid stock certificate,

promissory note, or bond." 298 Va. 659–60. The stock at issue qualified because it was represented by stock certificates and other documentation. *Id*. The Court did not announce a rule that any information stored on a physical object becomes subject to conversion.

That is essentially what Plaintiff asks this Court to hold. According to the Opposition, the electronic information became tangible because it was stored on the iPad. Opp. at 23. But that is not the rule in *Mackey*. The relevant question is whether the intangible property right itself is embodied in or evidenced by a document reflecting that right. *See Mackey*, 298 Va. at 659–60; *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305–06 (1994). A text message, photograph, work file, or location record does not become the equivalent of a stock certificate or promissory note simply because it appears on an iPad.

*American Conservative Union v. Institute for Legislative Analysis*, No. 1:24-cv-500, 2025 WL 510236 (E.D. Va. Feb. 13, 2025), makes the point even more directly. There, a former employee retained a physical laptop containing confidential and proprietary information. 2025 WL 510236 at *2. The court nevertheless dismissed the conversion claim directed to the information itself, relying on *Mackey* and concluding that confidential, proprietary, trade-secret, and other non-public information was intangible property not subject to conversion under Virginia law. *Id.* at *10. The fact that the information happened to reside on a physical laptop did not change the analysis.

Plaintiff's reliance on *Thyroff v. Nationwide Mutual Insurance Co.*, 8 N.Y.3d 283 (2007), and *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003), does not move the ball. *Thyroff* applied New York law. *Kremen* applied California law and expressly described its broader treatment of electronic property as the rule "at least . . . in California." 337 F.3d at 1034. Those cases show that other jurisdictions have taken a broader approach. They do not establish that Virginia has done the same, particularly after *Mackey*.

The same is true of *America Online, Inc. v. IMS*, 24 F. Supp. 2d 548 (E.D. Va. 1998). That was not a conversion case about ownership of electronic data. It involved trespass to chattels arising from roughly sixty million unsolicited emails that burdened AOL's computer network. *IMS*, 24 F. Supp. 2d at 550. It says nothing about whether emails, photographs, location information, or other electronic data constitute property subject to conversion under Virginia law. Nor does it include Plaintiff's cited proposition that "[a]lthough email accounts and electronic communications are not tangible property in the traditional sense, many courts have recognized claims for conversion or trespass to chattels involving digital 'property.'" Opp. at 24. That quote appears nowhere in *IMS*.

The Opposition next tries to avoid the intangible-property problem by focusing on screenshots, photographs, photocopies, compilations, and the alleged "Folder." Opp. at 23. But that creates a different problem. Conversion requires Plaintiff to show both a property interest in the specific property and an immediate right to possess it. *United Leasing*, 247 Va. at 305; *Economopoulos v. Kolaitis*, 259 Va. 806, 814 (2000). Even assuming Ms. Augstums made copies of Plaintiff's information, Plaintiff never explains why the newly created photographs, screenshots, or compilations became his property. A photograph does not become Plaintiff's property merely because it depicts information concerning him, nor does a screenshot become his property merely because it contains one of his communications.

The Opposition also overstates what the Complaint actually says. The Complaint alleges that Ms. Augstums made electronic or paper copies and "started a Folder where she had all the chats and documents and screenshots in it." Compl. ¶ 28(e). It does not allege that screenshots were printed, that the "Folder" was physical, or that Ms. Augstums created some tangible compilation owned by Plaintiff. Those details appear for the first time in the Opposition. And even

if tangible copies existed, Plaintiff still has not alleged why he owned those newly created copies or had an immediate right to possess them.

The physical iPad theory has its own problems. Plaintiff relies on *Shea v. Fridley*, 123 A.2d 1956 (Md. 1956), for the proposition that no demand is required where possession was wrongful from the outset. But the citation is wrong. There is no Maryland decision matching that citation. The case Plaintiff apparently meant to cite is *Shea v. Fridley*, 123 A.2d 358 (D.C. Mun. Ct. App. 1956), a District of Columbia decision. And even that case does not state the rule as broadly as Plaintiff suggests. *Shea* explains that where possession was initially lawful, a demand is required unless other facts independently establish a conversion. *Id.* at 361. Plaintiff therefore cites the wrong case and then overstates the rule stated in the actual one.

Even putting the demand issue aside, Plaintiff still has an ownership problem. Conversion requires a property interest and an immediate right to possession. *United Leasing*, 247 Va. at 305. Ms. Augstums disputes Plaintiff's claim that the iPad was indisputably his separate property, and the parties' Collaborative Property and Support Settlement Agreement provides a process for resolving disagreements over whether an item is separate or personal property and how remaining property is to be divided. Plaintiff's response—that there is no dispute because the Complaint says the iPad belongs to him, is circular. A contractual mechanism for resolving disputed ownership does not disappear simply because one side alleges that its position is correct.

Nor does labeling Count V as a tort claim avoid that threshold issue. Plaintiff cannot establish conversion without first establishing the ownership and possessory rights that are themselves disputed. The same problem applies to Plaintiff's assertion that Ms. Augstums cannot invoke the CSA because she allegedly concealed the iPad. Plaintiff cites no authority for that

proposition, and the allegations in the Complaint do not themselves nullify an otherwise applicable dispute-resolution provision.

Count V therefore remains deficient. The "Private Information" theory is inconsistent with Virginia law governing undocumented intangible property, and storing or copying information onto a physical medium does not change that. As for the iPad itself, the claim depends on disputed ownership and possessory rights that fall within the parties' agreed property-dispute procedure. Count V should be dismissed or, at minimum, stayed pending resolution of that threshold issue.

***E. Count VI Is Governed by Virginia Law.***

Plaintiff's response to Count VI rests wholly on speculation. Plaintiff does not dispute that Virginia does not recognize a common-law claim for intrusion upon seclusion. Instead, he asks the Court to assume that some unidentified (and unpled) act may have occurred somewhere outside Virginia because Ms. Augstums allegedly took the iPad "with her at all times." From that, the Opposition nakedly asserts that the alleged intrusions "more likely than not occurred in jurisdictions other than Virginia" and even adds that Ms. Augstums used the iPad "when she travelled away from the Residence." Opp. at 28. But the Complaint never alleges that Ms. Augstums traveled outside Virginia, much less that she accessed the iPad or committed any allegedly tortious act in another state. Both parties are Virginia residents, the former marital residence is in Virginia, and the iPad was allegedly left and retained there. Compl. ¶¶ 1–17. The out-of-state conduct improperly appears for the first time in the Opposition.

There is no dispute over the governing choice-of-law rules. This Court applies Virginia's rules, and Virginia applies *lex loci delicti* to tort claims. Under that rule, the law of the place where the wrongful act occurred controls, regardless of where its effects were later felt. *Milton v. IIT*

*Research Institute*, 138 F.3d 519, 522 (4th Cir. 1998). Plaintiff therefore needs some pleaded basis for locating the allegedly wrongful conduct outside Virginia. He has none.

*Tika v. Jack*, No. 3:21-CV-00030, 2022 WL 2955153, at *7 (W.D. Va. July 26, 2022) does not supply one. Plaintiff quotes *Tika* for the elements of a D.C. intrusion-upon-seclusion claim and then declares that the "place of wrong" must be wherever Ms. Augstums accessed the iPad. Opp. at 27. But *Tika* never adopted that choice-of-law rule. The court expressly recognized that the location of the alleged privacy invasion was "less clear" and applied D.C. law because the privacy claims arose from the same factual predicate as the D.C.-based defamation claim and, importantly, the defendant had not argued that any other law should apply. *Tika* does not hold that an electronic privacy claim survives whenever a plaintiff speculates that the defendant might have accessed a device while traveling somewhere else.

Plaintiff's reliance on *Andersson Gustafsson Advokatbyra KB v. eSCRUB Sys.,* No. 1:10-cv-632, 2011 WL 677053, (E.D. Va. Feb. 15, 2011) and *Malinowski v. Lichter Grp., LLC,* No. WDQ-14-917, 2015 WL 1129522 (D. Md. Mar. 11, 2015) is similarly misplaced. In *Andersson Gustafsson*, the amended complaint actually alleged a cross-border transaction: the defendant, while in California, allegedly made a misrepresentation during a telephone call to an attorney in Sweden, and the plaintiff expressly alleged that the misrepresentation was heard and the resulting harm occurred in Sweden. Against those pleaded multijurisdictional facts, the court deferred the choice-of-law determination pending a fuller record. *Id.* at *2. Here, by contrast, Plaintiff has not pleaded a single act of access occurring outside Virginia.

*Malinowski* is no better. There, the named plaintiffs were citizens of New York and Pennsylvania, and the court specifically recognized that the alleged economic injury could have been suffered in several states, meaning that the law of New York, Pennsylvania, or another

participant's state could apply. That is why the court described the choice-of-law inquiry as fact intensive and deferred a final determination. It does not stand for the proposition that discovery is required when the Complaint identifies no competing jurisdiction at all.

Plaintiff's citation to *Rosen v. Brookhaven Capital Management Co.*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002), is even worse. The Opposition attributes to *Rosen* the proposition that choice-of-law determinations are "usually reserved for trial or summary judgment." Opp. at 28. The cited decision contains no such holding; indeed, the text quoted in the Opposition is not even in the case. *Rosen* is a securities case concerning an investment-adviser exemption, and the discussion at page 227 addresses whether discovery might produce facts relevant to that exemption, not choice of law. Plaintiff has cited *Rosen* for a choice-of-law proposition that the case simply does not contain.

The Opposition's reference to Apple's servers "across potentially multiple jurisdictions" also does not help. Under *Milton*, the relevant inquiry is where the allegedly wrongful act occurred, not where some unidentified server may happen to be located. 138 F.3d at 522. Plaintiff's own theory is that Ms. Augstums committed the intrusion by using the iPad to examine his information. He cannot avoid Virginia law by pointing to unspecified cloud infrastructure in unspecified jurisdictions.

A plaintiff is not entitled to proceed to discovery simply to search for facts necessary to create a claim the Complaint does not plead. *See Barbour v. Garland*, 105 F.4th 579, 593 (4th Cir. 2024). Nor must the Court accept "unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). That is all Plaintiff offers here. The Complaint identifies no wrongful act occurring outside Virginia and no other jurisdiction whose law could plausibly govern Count VI. Plaintiff cannot use the Opposition, and then

discovery, to invent one. Virginia law governs, Virginia does not recognize the claim, and Count VI should be dismissed with prejudice.

### *F. Alternative Pleading Does Not Cure Deficient Claims.*

Plaintiff is free to plead alternative theories. However, each claim still has to stand on its own. The ECPA claim fails because the Complaint does not plausibly allege contemporaneous interception. The SCA claim fails because it does not plausibly allege access to communications in protected electronic storage rather than information already on the iPad. *Hately* does not change that. It addressed whether a provider can function as both an electronic communication service and a remote computing service. It did not hold that the same conduct automatically satisfies both the ECPA and SCA.

Furthermore, the case cited by Plaintiff does not excuse pleading defects. *Li* v. *Bristol* was decided after discovery, on summary judgment, after the defendant had invoked the Fifth Amendment throughout discovery. This case does not allow a plaintiff to plead missing elements by promising that discovery may fill them in later.

### *G. Plaintiff Is Not Automatically Entitled to Amend.*

Plaintiff also overstates *Foman v. Davis*. Leave to amend is liberal, but not automatic. *Foman* expressly identifies futility and prejudice as grounds for denying amendment. 371 U.S. 178, 182 (1962). That matters here because several of the defects are legal, not technical. Where amendment would be futile, dismissal should be with prejudice.

## III. CONCLUSION.

Plaintiff's Opposition leaves the primary defects in the Complaint untouched. It adds facts that were never pleaded, attributes allegations to paragraphs that do not contain them, and

repeatedly relies on cases for propositions those cases do not support. Those problems are not cosmetic. They go directly to the missing elements Defendant identified in the Motion

Stripped of the new allegations and inaccurate characterizations, the Complaint still fails to state the claims asserted. Count I does not plausibly allege a cognizable VCCA injury, examination of protected information, or conversion; Counts II and IV do not allege a contemporaneous interception; Count III does not plausibly allege access to communications in electronic storage; Count V fails under Virginia conversion law; and Count VI asserts a tort Virginia does not recognize.

Plaintiff cannot fix those defects by rewriting the Complaint in an opposition brief or by asking for discovery in hopes that the missing facts may turn up later. The Court should grant Ms. Augstums's Motion to Dismiss and dismiss with prejudice those claims that fail as a matter of law.

Dated: October 14, 2026

Respectfully Submitted,

/s/ Andrew J. Smith

Andrew J. Smith, Esq. (VSB No. 81538)
Cala Dossey, Esq. (VSB No. 100140)
Berenzweig Leonard, LLP
8300 Greensboro Drive; Suite 1250
McLean, Virginia 22102
Telephone: (703) 760-0402
Facsimile: (703) 462-8674
dsmith@berenzweiglaw.com
cdossey@berenzweiglaw.com
*Counsel for Defendant Ieva Augstums*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent by electronic mail and first-class mail to the following on October 14, 2026:

David N. Goldberg, Esq. (VSB No. 33468)
Offit Kurman, P.C.
8000 Towers Crescent Drive, Suite 1400
Tysons Corner, VA 22182
Telephone: (703) 745-1817
Facsimile: (703) 745-1835
dgoldberg@offitkurman.com
*Counsel for Plaintiff*

/s/ Andrew J. Smith
Andrew J. Smith, Esq.